**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| ROBERT M. GLEN,<br><br>    Plaintiff,<br><br>v.<br><br>TRIPADVISOR LLC, TRIPADVISOR, INC., ORBITZ, LLC, TRIP NETWORK, INC. D/B/A CHEAPTICKETS, KAYAK SOFTWARE CORPORATION, AND BOOKING HOLDINGS, INC.,<br><br>    Defendants. | §<br>§<br>§<br>§ C.A. NO.: _____-___<br>§<br>§ **JURY TRIAL DEMANDED**<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**COMPLAINT**

Plaintiff Robert M. Glen ("**Glen**") hereby files this action against Defendants TripAdvisor LLC ("**TripAdvisor**"), TripAdvisor, Inc. ("**TripAdvisor Inc.**"), Orbitz, LLC ("**Orbitz**"), Trip Network, Inc. d/b/a CheapTickets ("**CheapTickets**"), Kayak Software Corporation ("**Kayak**"), and Booking Holdings, Inc. ("**Booking Holdings**"), and respectfully states as follows:

### I.   INTRODUCTION

1. This action arises under the Cuban Liberty and Democratic Solidarity Act, 22 U.S.C. § 6021 *et seq.* (the "**Act**"), also known as the LIBERTAD Act or the Helms-Burton Act.

2. Title III of the Act provides U.S. nationals whose property in Cuba was confiscated by the communist Cuban government with a private right of action against those who traffic in, or participate in the trafficking of, that property.

3. Glen holds a claim to two beachfront properties located in Varadero, Cuba, on the Hicacos Peninsula. Varadero is one of Cuba's most popular beach resort towns, featuring one of

the Caribbean's best beaches and dozens of hotels and resorts that attract tourists and vacationers from around the world. Varadero is also the site of one of Cuba's busiest international airports.

4. Following the communist Cuban revolution, the properties were confiscated from Glen's family by the Cuban government. After the revolution, Glen's family fled Cuba, and Glen later became a naturalized U.S. citizen.

5. Today, the two properties are the site of four separate beachfront resorts, which together feature over 1,400 guestrooms, in addition to dozens of swimming pools, restaurants, and bars.

6. Under the Act, a person is liable for trafficking in confiscated property if that person, among other things, knowingly "engages in a commercial activity using or otherwise benefiting from confiscated property," or knowingly "participates in, or profits from, trafficking . . . by another person."

7. Defendants operate online booking websites, and provide or facilitate online booking services for hotels in Cuba, including the four beachfront resorts on the properties confiscated from Glen's family: the Iberostar Tainos, the Meliá Las Antillas, the Blau Varadero, and the Starfish Varadero.

8. By facilitating bookings at these hotels, Defendants are engaging in commercial activity that uses or otherwise benefits from Glen's confiscated property. Defendants are also participating in, and profiting from, trafficking committed by the hotels themselves.

9. Because Defendants have trafficked in confiscated property in violation of the Act, they are subject to Glen's private action for civil damages under Title III, measured as the greater of the current fair market value of the property, or the value of the property at the time of confiscation plus interest.

10. Glen accordingly brings this statutory action to vindicate his claim to confiscated property and to obtain the compensation that he is rightfully entitled to under the Act.

## II. PARTIES

11. Plaintiff Robert M. Glen is an individual residing in Plano, Texas. Glen is a naturalized United States citizen and a "United States national" pursuant to 22 U.S.C. § 6023(15).

12. Defendant TripAdvisor LLC is a Delaware limited liability company. TripAdvisor LLC may be served through its registered agent at the following address: The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

13. Defendant TripAdvisor, Inc. is a corporation chartered in Delaware, with a principal office in Massachusetts. TripAdvisor Inc. may be served through its registered agent at the following address: The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

14. Together, TripAdvisor and TripAdvisor, Inc. operate the www.tripadvisor.com website. TripAdvisor Inc. is TripAdvisor's corporate parent and ultimately owns and controls TripAdvisor.

15. Defendant Orbitz, LLC is a Delaware limited liability company, with a principal office in Chicago, Illinois. Orbitz may be served through its registered agent at the following address: National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904. Orbitz operates the www.orbitz.com website.

16. Defendant Trip Network, Inc. d/b/a CheapTickets is a corporation chartered in Delaware, with a principal office in Chicago, Illinois. CheapTickets may be served through its

registered agent at the following address: National Registered Agents, Inc., 160 Greentree Drive, Suite 101, Dover, Delaware 19904. CheapTickets operates the www.cheaptickets.com website.

17. Orbitz and CheapTickets are each ultimately owned and controlled by non-party Expedia Group, Inc.

18. Defendant Kayak Software Corporation is a corporation chartered in Delaware, with a principal office in Connecticut. Kayak may be served through its registered agent at the following address: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Kayak operates the www.kayak.com website.

19. Defendant Booking Holdings, Inc. is a corporation chartered in Delaware, with a principal office in Connecticut. Booking Holdings may be served through its registered agent at the following address: Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

20. Booking Holdings ultimately owns and controls Kayak.

### III.   JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Glen's claim arises under 22 U.S.C. § 6082 and the amount-in-controversy exceeds the sum or value of $50,000, exclusive of interest, costs, and attorneys' fees.

22. This Court may exercise personal jurisdiction over each Defendant by virtue of their incorporation or organization in Delaware.

23. Venue in this District is proper under 28 U.S.C. § 1391(b)(1) because Defendants are residents of the State in which this District is located.

## IV. STATEMENT OF FACTS

### A. Passage and Implementation of the Act

24. The Act became effective March 12, 1996.

25. Among the Act's legislative purposes is to "protect United States nationals against confiscatory takings and the wrongful trafficking in property confiscated by the Castro Regime."

26. Title III of the Act ("**Title III**") establishes a private right of action for money damages against any person who "traffics" in confiscated property.

27. Glen did not previously have an opportunity to bring a private right of action because, until recently, private rights of action under Title III were suspended pursuant to the authority given to the President of the United States by Congress under the Act.

28. The President has delegated this suspension authority to the United States Secretary of State. On March 4, 2019, the State Department announced a partial lifting of the suspension to permit private actions to proceed, beginning March 19, 2019, against Cuban entities or sub-entities identified on the State Department's restricted entities list. On or about April 2, 2019, the partial lifting of the suspension was extended again through May 1, 2019. Most recently, on April 17, 2019, the State Department announced a full lifting of the suspension, beginning May 2, 2019.

29. In his remarks regarding the decision, Secretary of State Pompeo made clear that "[e]ffective May 2nd . . . the right to bring an action under Title III of the Libertad Act will be implemented in full."

### B. Glen's Claim to Property in Cuba

30. Glen is the owner of property located in Varadero, Cuba that was originally owned by Glen's great-grandfather, Sergio de la Vega, who lived in Cárdenas, across the bay from the Hicacos Peninsula. Glen's great-grandfather traveled by boat to the peninsula and built improvements upon it.

31. Ownership of the property later passed to Glen's grandfather, Manuel de la Vega. When Manuel died in 1928, the properties passed to his wife, Ana Maria Martinez Andreu ("**Martinez Andreu**"), Glen's grandmother.

32. Manuel and Martinez Andreu divided their property into two, contiguous plots. The first was known as "**Blancarena**," and included 280 meters of ocean frontage.

33. The second was known as "**Cotepen**" (short for "Co-Territorial Peninsula") and included 715 meters of ocean frontage. (Together, Blancarena and Cotepen are the "**Glen Properties**"). Glen's family built a small home on the Glen Properties.

34. Cotepen is contiguous to Blancarena and sits directly to the east of Blancarena. Cotepen and Blancarena are of equal depth, each extending southward toward the present-day Autopista Sur, the main road that traverses the peninsula.

35. When Martinez Andreu died, Blancarena passed to Elvira de la Vega Martinez ("**Elvira**"), one of Martinez Andreu's two daughters, and Cotepen passed to Ana Maria de la Vega Martinez ("**Ana Maria**"), Martinez Andreu's other daughter. Elvira is Glen's mother. Ana Maria is Glen's aunt.

36. Elvira and Ana Maria exercised ownership over Blancarena and Cotepen and worked to develop the land. In the late 1950s, Elvira considered selling a portion of Blancarena and subdividing it, but her plans were interrupted by the revolution.

37. Maps and surveys drawn in 1958, just prior to the Cuban revolution, reflect the location of the Glen Properties on the peninsula, including in connection with the construction of a canal (still in existence today) directly to the south of the properties.

38. After January 1, 1959, and in connection with Cuban revolution, the communist Cuban government confiscated the Glen Properties.

39. Following the revolution, Ana Maria and Elvira fled Cuba.

40. When Ana Maria and Elvira died, ownership of Blancarena and Cotepen passed solely to Glen.

41. Like Ana Mara and Elvira, Glen has continued to maintain a claim to the Glen Properties.

42. On information and belief, the Cuban government maintains possession of the Glen Properties.

43. The Cuban government has not paid any compensation to Glen or his family for its seizure of the Glen Properties. Instead, as detailed below, the Cuban government has worked with hotel chains to build, develop, and operate four beachfront resorts on the Glen Properties.

C. **The Beachfront Hotels Occupying the Glen Properties**

44. Varadero sits on the Hicacos Peninsula. The narrow peninsula, which is approximately eleven miles long but only a mile or so wide, extends in a northeasterly direction from the northern side of the Cuban mainland. The northern side of the peninsula faces the open ocean and features miles of contiguous, white-sand beach. The southern side of the peninsula faces the Bay of Cárdenas.

45. Today, Varadero is one of Cuba's most popular beach resort towns, featuring one of the Caribbean's best beaches, dozens of hotels and resorts, a nature reserve, and other amenities.

46. According to TripAdvisor's 2019 Travelers' Choice awards, Varadero is the second-best beach in the world. And according to Lonely Planet, Varadero boasts a beach that is "undoubtedly one of the Caribbean's best."

47. Because of its world-renowned beach and accessibility, Varadero is a popular destination for tourists from around the world, particularly Europe and Canada. The resort town is easily accessible from Juan Gualberto Gómez Airport, one of Cuba's busiest international airports.

48. The Glen Properties are the site of four separate beachfront hotels, which run contiguously from west to east along the northern, beachfront side of the peninsula.

49. Blancarena is the site of Iberostar Tainos, operated by Spanish hotel chain Iberostar (the "**Iberostar Tainos**"). The Iberostar Tainos is a four-star, all-inclusive reports featuring 272 guestrooms.

50. Cotepen is the site of three resorts. The first is currently known as Meliá Las Antillas (the "**Las Antillas**"), operated by Spanish hotel chain Meliá Hotels International, on the site of a former Beaches-brand resort. Las Antillas is a four-star, adults-only, all-inclusive resort featuring 350 guestrooms. The second is known as the Blau Varadero (the "**Blau**"). The Blau is an adults-only, all-inclusive resort featuring 395 guestrooms. The third is known as the Starfish Varadero (the "**Starfish**"). The Starfish is a family friendly, all-inclusive resort featuring 411 rooms. (Together, the Iberostar Tainos, Las Antillas, Blau, and Starfish are the "**Subject Hotels**").

51. In addition to their over 1,400 guestrooms, the Subject Hotels also feature restaurants, bars, swimming pools, and other amenities.

52. The Subject Hotels have never paid any compensation to Glen or his family to operate on the Glen Properties. Nor do the Subject Hotels have Glen's authorization to do so.

**D.    TripAdvisor's Business and Trafficking in the Glen Properties**

53. Founded in 2000, TripAdvisor markets itself as "the world's largest travel platform" and "the ultimate travel companion." TripAdvisor's current motto is "Know Better. Book Better. Go Better."

54. What began as an online community in which web users could post their own reviews of hotels is today a publicly traded technology and media giant with over 3,000 employees and featuring over 500 million reviews.

55. But TripAdvisor is not just an online review platform. Through its "Instant Booking" feature, first launched in 2015, TripAdvisor allows users to book rooms at hotels directly through the TripAdvisor website, without ever having to leave the TripAdvisor website.

56. Instant Booking has been part of a larger effort by TripAdvisor to help travelers understand that TripAdvisor is not just a review site, but rather, a site where they can both find the best deal available, and also complete the reservation process.

57. When a user utilizes the Instant Booking feature, TripAdvisor earns a substantial commission from the merchant of record for the reservation, whether an online travel agency or a hotel.

58. TripAdvisor also derives substantial review through click-based advertising, and in particular, when TripAdvisor users follow links to travel partner sites, including online travel agencies such as Expedia, Orbitz, and Travelocity, that list the Subject Hotels.

59. TripAdvisor also publishes reviews and materials concerning travel. For example, TripAdvisor curates the "Travelers' Choice Awards" each year. In 2019, TripAdvisor rated Varadero Beach the second-best beach in the world.

60. TripAdvisor also provides "Certificates of Excellence" to hotels that consistently earn favorable reviews. TripAdvisor's listings for the Iberostar Tainos and the Blau each currently feature a prominent listing of Certificates of Excellence awarded by TripAdvisor to these two hotels.

61. Users can access information about each Subject Hotel using the TripAdvisor website, including each Subject Hotel's amenities and policies, as well as user reviews.

62. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the Instant Booking feature on the TripAdvisor website.

E.   **Orbitz and CheapTickets' Business and Trafficking in the Glen Properties**

63. Orbitz and CheapTickets are brands controlled by Expedia Group, Inc., which markets itself as "the world's travel platform" and "the world's largest online travel company."

64. Orbitz launched in 2001 and was acquired by Expedia Group in 2015.

65. CheapTickets was founded in 1986 and was also acquired by Expedia Group in 2015.

66. Orbitz and CheapTickets are each online travel agencies that facilitate hotel guestroom bookings primarily through two business models: the merchant model and the agency model.

67. Under the merchant model, Orbitz and CheapTickets facilitate the booking of hotel guestrooms from travel suppliers, and are the merchant of record for such bookings. In the merchant model, users pay Orbitz and CheapTickets directly upon booking a reservation. Orbitz

and CheapTickets earn a profit in these transactions by contracting in advance with lodging providers to obtain access to guestrooms at negotiated (and discounted) rates.

68. Under the agency model, Orbitz and CheapTickets facilitate travel bookings and act as the agent in the transaction, passing reservations booked by the traveler to the relevant provider and receiving a commission or fee in the process.

69. Under either model, Orbitz and CheapTickets profit when website users book guestrooms at hotels listed on their websites.

70. Orbitz provides online booking services for the Subject Hotels in Cuba.

71. Users can access information about each Subject Hotel using the Orbitz.com website, including each Subject Hotel's amenities and policies, as well as user reviews.

72. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the Ortbiz.com website.

73. CheapTickets provides online booking services for the Subject Hotels in Cuba.

74. Users can access information about each Subject Hotel using the cheaptickets.com website, including each Subject Hotel's amenities and policies, as well as user reviews.

75. As of the date of the filing of this Complaint, users can book hotel rooms at the Subject Hotels by using the cheaptickets.com website.

**F.  Kayak and Booking Holdings' Business and Trafficking in the Glen Properties.**

76. Founded in 2004, Kayak markets itself as a metasearch engine and fare aggregator. Kayak enables users to compare hotel prices across websites, including other online travel sites such as Orbitz and CheapTickets, and Kayak's affiliate, non-party Booking.com.

77. Kayak is owned by Booking Holdings. Booking Holdings refers to itself as the "world leader in online travel & related services."

78. From the Kayak website, users choose their preferred deal, and then click-through to the website listing that deal.

79. When a user clicks-through to the website listing the deal, Kayak earns a commission based on either the user's click-through to the website, or the user's completion of a reservation on the website. In other words, third-party sites, such as online travel agencies, pay Kayak for redirecting users to their webpages.

80. Kayak uses an algorithm to list "Recommended" hotels to its users.

81. But the algorithm is not only based on factors such as user reviews, price, or popularity. Rather, Kayak factors in the average revenue potential for Kayak from each hotel result. In other words, Kayak tries to steer its users to websites and hotel reservations that will generate the greatest commissions for Kayak.

82. In addition, where multiple providers list the same price for a given hotel, Kayak highlights (without disclosing to users) providers that have agreed to pay more to Kayak per click or per reservation. Again, Kayak steers its users to websites and reservations that will generate the greatest commissions for Kayak.

83. When Kayak users are redirected to Subject Hotel listings on third-party websites, such websites include headers reminding users that "You picked this property on Kayak."

84. Kayak has marketed the addition of Cuba offerings on its website. For example, in a June 2017 blog post, Kayak announced that the website had seen "huge spikes" in searches to Havana, and that Havana appeared on Kayak's spring break and summer travel recommendations.

85. Kayak lists the Subject Hotels on its website and facilities the booking of the Subject Hotels in Cuba.

86. Users can access information about each Subject Hotel using the Kayak website, including each Subject Hotel's amenities and policies, as well as user reviews.

87. Users can then click-through to websites through which they may book the Subject Hotels. When users click-through from the Kayak website to these other websites and/or then book hotels on these other websites, Kayak earns a commission. Kayak seeks to maximize its commissions by encouraging users to select hotels and click-through websites that result in the greatest commissions to Kayak.

## V.  JURY TRIAL DEMAND

88. Glen hereby demands a trial by jury on all issues so triable.

## VI.  CAUSE OF ACTION

### Trafficking in Confiscated Property
### 22 U.S.C. § 6082(a)

89. Glen incorporates by reference all of the allegations set forth in all the preceding paragraphs of the Complaint as if fully set forth herein.

90. Glen is a U.S. national and holds a claim to property that was confiscated by the Cuban government after January 1, 1959, namely, the Glen Properties.

91. Defendants are each a "person" as defined by 22 U.S.C. § 6023(11).

92. Defendants have, and continue to, knowingly traffic in the Glen Properties by engaging in commercial activity using or otherwise benefiting from confiscated property, including by facilitating the booking of guestrooms at the Subject Hotels.

93. Defendants have, and continue to, knowingly traffic in the Glen Properties by participating in, or profiting from, trafficking committed by the Subject Hotels, including the Subject Hotels' operation of beachfront resorts on the Glen Properties.

94. Kayak has, and continues to, knowingly traffic in the Glen Properties by participating in, or profiting from, trafficking committed by online travel agencies, including Orbitz, CheapTickets, Expedia, Hotels.com, and Travelocity.

95. TripAdvisor Inc. has, and continues to, knowingly traffic in the Glen Properties by participating in, or profiting from, trafficking committed by TripAdvisor.

96. Booking Holdings has, and continues to, knowingly traffic in the Glen Properties by participating in, or profiting from, trafficking committed by Kayak.

97. At all relevant times, Defendants have conducted such trafficking without Glen's authorization.

98. The fair market value of the Glen Properties far exceeds $50,000, exclusive of interest, costs, and attorneys' fees.

99. Glen was not eligible to file a claim with the Foreign Claims Settlement Commission.

100. In compliance with 22 U.S.C. § 6082(a)(3)(B), Glen provided notice of his claims at least 30 days before initiating this action. After the end of the 30-day period, Defendants continued to traffic in the Glen Properties.

### VII.   DEMAND FOR RELIEF

WHEREFORE, Glen respectfully asks the Court to enter judgment in his favor against Defendants:

    a. Awarding actual damages in an amount to be determined under 22 U.S.C. § 6082(a)(1)(A)(i);

    b.    Awarding treble damages pursuant to 22 U.S.C. § 6082(a)(3)(B);

    c.    Ordering Defendants to pay Glen's reasonable attorneys' fees and costs incurred in this action pursuant to 22 U.S.C. § 6082(a)(1)(A)(ii);

    d.    Awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

    e.    Granting such other and further relief that the Court deems just and proper.

OF COUNSEL:

Craig A. Boneau
Ryan M. Goldstein
Scott Saldaña
REID COLLINS & TSAI LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
(512) 647-6100

September 26, 2019

ROSENTHAL, MONHAIT & GODDESS, P.A.

/s/ Jessica Zeldin

Jessica Zeldin (Del. Bar No. 3558)
919 N. Market Street, Suite 1401
Wilmington, DE 19801
(302) 656-4433
jzeldin@rmgglaw.com

*Counsel for Robert M. Glen*