IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT M. GLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 1:19-cv-01809-MN |
| | ) | |
| TRIPADVISOR LLC, TRIPADVISOR, INC., | ) | |
| ORBITZ, LLC, TRIP NETWORK, INC. | ) | |
| D/B/A CHEAPTICKETS, KAYAK | ) | |
| SOFTWARE CORPORATION, AND | ) | |
| BOOKING HOLDINGS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS KAYAK SOFTWARE CORPORATION AND BOOKING HOLDINGS
INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

OF COUNSEL:

BAKER MCKENZIE LLP
Michael A. Duffy
Michael C. McCutcheon

300 East Randolph Street
Suite 5000
Chicago, IL  60601
(312) 861-8000
Michael.Duffy@bakermckenzie.com
Michael.McCutcheon@bakermckenzie.com

L Andrew S. Riccio
425 Fifth Avenue
New York, NY  10018
(212) 626-4100
Andrew.Riccio@bakermckenzie.com

*Attorneys for Defendants Kayak Software
Corporation and Booking Holdings Inc.*

February 7, 2020

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
John P. DiTomo (#4850)
Barnaby Grzaslewicz (#6037)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200
jditomo@mnat.com
bgrzaslewicz@mnat.com
*Attorneys for Defendants Kayak Software
Corporation and Booking Holdings Inc.*

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ......................................................................................................................... 3

    I.     The Helms-Burton Act ...................................................................................... 3

    II.    Facts Alleged in the Complaint ......................................................................... 4

    III.   Booking Holdings and Kayak ........................................................................... 4

ARGUMENT ............................................................................................................................... 6

    I.     Plaintiff Fails to State a Claim for Relief ......................................................... 6

         A.    Plaintiff is barred from bringing this action by the Election
               of Remedies Clause of the Act ............................................................. 6

         B.    Plaintiff did not "acquire" the alleged claim to property
               until after the statutory bar date ............................................................ 9

         C.    Plaintiff fails to adequately plead "trafficking" ................................. 10

               1.    The Lawful Travel Clause defeats Plaintiff's claim ................ 11

               2.    Plaintiff fails to allege that Defendants acted
                     "knowingly and intentionally" ................................................. 16

    II.    The Court Lacks Subject-Matter Jurisdiction to Hear this Case .......................... 18

         A.    Plaintiff cannot demonstrate an injury-in-fact ................................... 19

         B.    Plaintiff fails to satisfy the causation element of standing ................. 19

CONCLUSION ......................................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Rumsfeld,*
    450 F. Supp. 2d 440 (D. Del. 2006) ........................................................................6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................17

*Ayestas v. Davis,*
    138 S. Ct. 1080 (2018) ............................................................................................15

*Ball v. Famiglio,*
    726 F.3d 448 (3d Cir. 2013) ...................................................................................14

*Blunt v. Lower Merion Sch. Dist.,*
    767 F.3d 247 (3d Cir. 2014) ...................................................................................11

*Brown v. J. Kaz, Inc.,*
    581 F.3d 175 (3d Cir. 2009) ...................................................................................12

*Buck v. Hampton Twp. Sch. Dist.,*
    452 F.3d 256 (3d Cir. 2006) .....................................................................................6

*Burtch v. Milberg Factors, Inc.,*
    662 F.3d 212 (3d Cir. 2011) .....................................................................................6

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,*
    447 U.S. 102 (1980) ...................................................................................................7

*Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of
    Treasury,*
    606 F. Supp. 2d 59 (D.D.C. 2009) .........................................................................14

*Evankavitch v. Green Tree Servicing, LLC,*
    793 F.3d 355 (3d Cir. 2015) ...................................................................................13

*Fish v. Kobach,*
    840 F.3d 710 (10th Cir. 2016) ................................................................................15

*Freedman v. City of Allentown, Pa.,*
    853 F.2d 1111 (3d Cir. 1988) .................................................................................17

*Garcia v. United States,*
    469 U.S. 70 (1984) ...................................................................................................16

*Garcia-Bengochea v. Carnival Corp.*,
　No. 1:19-cv-21725, 2019 WL 4015576 (S.D. Fla. Aug. 26, 2019) (King, J.) ........................11

*Glen v. Club Mediterranee, S.A.*,
　450 F.3d 1251 (11th Cir. 2016) ...........................................................................................8

*Glen, et al. v. Club Mediterranee S.A., et al.*,
　Case No. 1:04-cv-21664-KMM (S.D. Fla., July 8, 2004) ....................................................7, 8

*Hassen v. Gov't of the V.I.*,
　861 F.3d 108 (3d Cir. 2017)................................................................................................17

*Havana Docks Corp. v. Carnival Corp.*,
　No. 1:19-cv-21724-BB, slip op. (S.D. Fla. Aug. 28, 2019), Dkt. 47 (Bloom, J.)...................11

*Leveto v. Lapina*,
　258 F.3d 156 (3d Cir. 2001) ...............................................................................................13

*Lujan v. Defs. of Wildlife*,
　504 U.S. 555 (1992)...........................................................................................18, 19, 20

*Morrow v. Balaski*,
　719 F.3d 160 (3d Cir. 2013)................................................................................................6

*Nat. Res. Def. Council, Inc. v. Thomas*,
　838 F.2d 1224 (D.C. Cir. 1988) ..........................................................................................16

*Parker v. Conway*,
　581 F.3d 198 (3d Cir. 2009)...............................................................................................11

*Patterson v. New York*,
　432 U.S. 197 (1977)...........................................................................................................13

*Polhill v. FedEx Ground Package Sys.*,
　604 F. App'x 104 (3d Cir. 2015) .........................................................................................17

*Prometheus Radio Project v. FCC*,
　373 F.3d 372 (3d Cir. 2004)................................................................................................15

*Schaffer v. Weast*,
　546 U.S. 49 (2005).......................................................................................................12, 13

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
　678 F.3d 235 (3d Cir. 2012)..........................................................................................18, 19

*Southmark Prime Plus, L.P. v. Falzone*,
　776 F. Supp. 888 (D. Del. 1991) ..........................................................................................7

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ..................................................................................18, 19

*Steele v. First Nat'l Bank of Mifflintown*,
  963 F. Supp. 2d 417 (M.D. Pa. 2013) ...............................................................2, 17

*Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*,
  525 F.3d 1107 (11th Cir. 2008) ..............................................................................12

*United States v. Hartsock*,
  347 F.3d 1 (1st Cir. 2003) ......................................................................................13

*Wise v. Biowish Techs., Inc.*,
  No. 18-676-RGA, 2019 U.S. Dist. LEXIS 155464 (D. Del. Sep. 12, 2019) ...........6

*Wright v. Portfolio Recovery Affiliates*,
  No. 09-612-GMS, 2011 U.S. Dist. LEXIS 33612 (D. Del. Mar. 30, 2011) ...........11

*Yagla v. Simon*,
  Civil Action No. 2:14-cv-181, 2015 U.S. Dist. LEXIS 37623 (W.D. Pa. Mar.
  3, 2015) ...................................................................................................................16

**Statutes**

22 U.S.C. § 6023(13) ........................................................................................................3

22 U.S.C. § 6023(13)(A) ....................................................................................10, 16, 17

22 U.S.C. § 6023(13)(B) ......................................................................2, 10, 11, 14

22 U.S.C § 6082(a) .......................................................................................................3, 13

22 U.S.C. § 6082(a)(1)(A) ................................................................................11, 12, 13

22 U.S.C. § 6082(a)(4)(B) .......................................................................................2, 9, 10

22 U.S.C. § 6082(f)(1)(B) .........................................................................................2, 6, 7

Helms-Burton Act of 1996, 22 U.S.C. §§ 6021, *et seq.*.......................................... *passim*

International Claims Settlement Act of 1949 Title V (22 U.S.C. 1643 *et seq.*) .............7

**Other Authorities**

31 C.F.R. 515, subpart E ..................................................................................................14

31 C.F.R. § 515.206(a) .................................................................................................5, 15

31 C.F.R. § 515.560(a) ....................................................................................................14

31 C.F.R. § 515.572(a)..........................................................................................................5, 14

31 C.F.R. § 515.572(c)................................................................................................................5

141 Cong. Rec. S15320-S15321 (daily ed. Oct. 19, 1995)..........................................................14

142 Cong. Rec. H1645 (daily ed. Mar. 4, 1996).........................................................................15

142 CONG. REC. H1645-02 ........................................................................................................16

BLACK'S LAW DICTIONARY 928 (11th ed. 2014) .........................................................................15

Fed. R. Civ. P. 8(a)(2)..................................................................................................................6

Fed. R. Civ. P. Rule 12(b)(1) ..........................................................................................3, 18, 20

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................. *passim*

Fed. R. Civ. P. Rule 56 .................................................................................................................7

*Incident*, MERRIAM-WEBSTER.COM, https://www.merriam-
     webster.com/dictionary/incident ........................................................................................15

United States Constitution Article III ...........................................................................................18

## INTRODUCTION

In his amended complaint, plaintiff Robert M. Glen claims that he is the owner of a claim to beachfront property in Cuba that was confiscated by the Cuban government during the Cuban revolution in 1959. According to plaintiff, the property is now the site of four hotels: the Iberostar Tainos, the Melia Las Antillas, the Blau Varadero, and the Starfish Varadero (together, the "***Subject Hotels***").

Almost fifty years after the Cuban government allegedly confiscated the property at issue, defendant Kayak Software Corporation ("***Kayak***") began to offer travelers the ability to search for hotels anywhere in the world—including the Subject Hotels—through a web-based search engine. Kayak provides search results to travelers primarily by providing travelers information and links to third-party websites on which reservations can be made. In 2013, defendant Booking Holdings Inc. ("***Booking Holdings***" and, together with Kayak, "***defendants***") acquired Kayak.[1] As its name indicates, Booking Holdings is a holding company and engages in no travel-related or other activity.  Plaintiff has named Booking Holdings as a defendant merely because it owns the shares of Kayak. Am. Compl. ¶¶ 26, 135. Kayak has always operated (and continues to operate) consistent with general and specific licenses issued by the United States government for offering travel-related services to Cuba, *i.e.*, lawful travel, as well as exemptions under the Cuban Assets Control Regulations.

Plaintiff, no stranger to the U.S. federal court system, has filed suit against defendants for allegedly "trafficking" in confiscated property under Title III of the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, 22 U.S.C. §§ 6021, *et seq.* (the "***Helms-***

---

[1] At the time of acquisition, Booking Holdings was known as Priceline.com.

*Burton Act*" or the "*Act*"). Plaintiff seeks damages from defendants equal to three times the value of the property he claims was confiscated, plus attorneys' fees and costs.

Plaintiff's case fails for four independent reasons: *First*, plaintiff is *barred* from bringing a Title III action because he (and his mother) have already litigated this claim in a 2004 case that was ultimately rejected at the motion to dismiss stage and later affirmed by the Eleventh Circuit Court of Appeals. The Helms-Burton Act's Election of Remedies clause, however, explicitly prohibits a person from bringing more than one such cause of action. *See* 22 U.S.C. § 6082(f)(1)(B). Thus, plaintiff's claim is barred by the Act's own terms.

*Second*, plaintiff is *also barred* from bringing a Title III action because he has failed to sufficiently plead that he owns an actionable claim to property under Title III of the Act. Plaintiff does not (and, indeed, cannot) allege that he acquired a claim to the Subject Hotels before March 12, 1996 as required by law. This omission makes his claim subject to a time-bar under the Helms-Burton Act. *See* 22 U.S.C. § 6082(a)(4)(B). In reality, plaintiff did *not* acquire his claim to the Glen Properties (defined below) before March 12, 1996, as his mother and aunt, from whom he alleges to have inherited his claim, were alive at that time. Thus, this case is barred because plaintiff does not meet this threshold requirement.

*Third*, plaintiff does not even sufficiently plead the necessary elements of a Title III cause of action by failing to set forth facts as required by the definition of the term "traffics,"— *i.e.*, plaintiff has failed to plead that defendants engaged in conduct that was not incident to lawful travel to Cuba. *See* 22 U.S.C. § 6023(13)(B). That plaintiff's allegations of trafficking are deficient is not surprising because Kayak (and, hence, its parent company Booking Holdings) operates consistent with U.S. law regarding travel to Cuba. Even more, plaintiff fails to set forth

any facts to support the "knowingly and intentionally" requirement also contained in the definition of "traffics." *See* 22 U.S.C. § 6023(13).

**Fourth**, plaintiff lacks constitutional standing to bring this action; and, consequently, this Court lacks subject matter jurisdiction over this case. Plaintiff fails to present facts demonstrating that the alleged confiscation by the Cuban government of the claimed property, with no allegation of any participation by defendants, caused plaintiff an injury-in-fact. Indeed, plaintiff has not alleged any nexus or causal connection between the alleged injury and defendants' alleged conduct (*i.e.*, in the case of Kayak, offering users the ability to search for rooms at the Subject Hotels in Cuba). As such, plaintiff has not established subject-matter jurisdiction over this case so it must be dismissed pursuant to Rule 12(b)(1).

## BACKGROUND

### I.    The Helms-Burton Act

Congress passed the Helms-Burton Act in 1996. Title III of the Act—subject to certain limitations and definitions—grants U.S. nationals who "own[ ] a claim" to "property" that was confiscated by the Cuban government the right to sue and recover damages from any person that "traffics" in such property. 22 U.S.C § 6082(a). The Act grants the President the ability to suspend the right to bring an action under Title III for successive six-month periods. *Id.* § 6085(c). Shortly after the Act was enacted, and before Title III became effective, President Clinton suspended the right to bring an action under Title III and, thereafter, renewed the suspension during the remainder of his presidency. Presidents Bush and Obama followed suit for each succeeding six-month period thereafter. President Trump continued the suspension, but only for a time. More than twenty years after the Act's passage, on May 2, 2019, the Trump administration permitted the suspension of the right to bring a Title III action to expire.

## II.     Facts Alleged in the Complaint

Plaintiff alleges that he "holds a claim" to two beachfront properties (*the "Glen Properties"*) located in Varadero, Cuba, which are presently the site of the Subject Hotels. Am. Compl. ¶¶ 3, 7. Plaintiff asserts that "[b]y facilitating bookings at [the subject] hotels," defendants have "trafficked in confiscated property." *Id.* ¶¶ 8-9.

According to plaintiff, the Glen Properties were originally owned by plaintiff's great-grandfather, Sergio de la Vega, and that after his death, ownership of the properties "passed" to plaintiff's grandfather, Manuel de la Vega. *Id.* ¶¶ 36-37. Plaintiff alleges that after Manuel de la Vega's death, the properties then "passed" to plaintiff's grandmother, Ana Maria Martinez Andreu (Manuel de la Vega's wife). *Id.* ¶ 37. Plaintiff alleges that his grandparents divided the property into two plots, "Blancarena" and "Cotepen." *Id.* ¶¶ 38-39. Plaintiff then alleges that after Martinez Andreu's death, Blancarena "passed" to Elvira de la Vega Martinez (plaintiff's mother) and Cotepen "passed" to Ana Maria de la Vega Martinez (plaintiff's aunt). *Id.* ¶ 42.

Plaintiff states that the Cuban government confiscated the Glen Properties "[a]fter January 1, 1959, and in connection with [the] Cuban revolution." *Id.* ¶ 45. Yet, plaintiff alleges that ownership of the Glen Properties "passed solely" to him "[w]hen Ana Maria and Elvira died." *Id.* ¶ 47. According to plaintiff, the Glen Properties are now the site of the Subject Hotels. *Id.* ¶¶ 55-57.

## III.     Booking Holdings and Kayak

Booking Holdings is a Delaware corporation with its principal place of business in Connecticut. Am. Compl. ¶ 25. Booking Holdings is a holding company and does not maintain or otherwise operate any website on which travel reservations can be made or searches conducted related to travel. Booking Holdings is the owner of 100% of the equity in Kayak.

Kayak is a Delaware corporation with its principal place of business in Connecticut. *Id.* ¶ 24. Kayak functions like an online search engine (*e.g.*, Google, Yahoo and Bing) for travel. Any individual can search for travel options on Kayak's websites, including to Cuba, and then is presented with search results consisting of the prices and listings offered by online travel companies ("***OTCs***") and travel service providers, such as hotel chains, for the type of travel searched. Users who wish to book an accommodation in Cuba that appears in Kayak's search results must do so using the website of the OTC or the travel service provider offering the accommodation. In all cases, no travel—to Cuba or anywhere else—is actually booked using Kayak's platform.

The search functionality provided by Kayak falls within the "informational materials exemption" in the Cuban Assets Control Regulations (the "***CACR***"), administered by the U.S. Department of the Treasury's Office of Foreign Assets Control ("***OFAC***"). *See* 31 C.F.R. § 515.206(a) ("The importation from any country and the exportation to any country of information or informational materials as defined in § 515.332, whether commercial or otherwise, regardless of format or medium of transmission, are exempt from the prohibitions and regulations of this part"). As such, Kayak's business of presenting pre-existing information, as created by OTCs and travel service providers (not Kayak), about accommodations in Cuba is exempt from the restrictions administered by OFAC. Booking Holdings, too, as the owner of a suite of travel-related companies, has been operating under various OFAC authorizations for travel service providers.  These include a general license at 31 C.F.R. § 515.572(a)(1) for the provision of "travel services in connection with travel-related transactions involving Cuba" and specific licenses (issued pursuant to 31 C.F.R. § 515.572(c)).

**ARGUMENT**

**I.    Plaintiff Fails to State a Claim for Relief**

Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Wise v. Biowish Techs., Inc.*, No. 18-676-RGA, 2019 U.S. Dist. LEXIS 155464, at *5 (D. Del. Sep. 12, 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While courts treat all well-pled factual allegations in the complaint as true, they reject "unsupported conclusions and unwarranted inferences," as well as "legal conclusion[s] couched as [] factual allegation[s]." *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013). In ruling on a motion to dismiss for failure to state a claim, courts may consider "matters . . . integral to the claim, items subject to judicial notice, [and] matters of public record." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see also Adkins v. Rumsfeld*, 450 F. Supp. 2d 440, 444 (D. Del. 2006) ("Judicial notice of public records outside the pleadings is permitted on a motion to dismiss.").

**A.    Plaintiff is barred from bringing this action by the
Election of Remedies Clause of the Act**

The Helms-Burton Act prohibits a plaintiff from bringing more than one action for compensatory damages related to the same property, by requiring the plaintiff to choose only one remedy, *i.e.*, the "***Election of Remedies***" clause in Section 6082(f)(1)(B). That Section of the Act provides as follows:

> Subject to paragraph (2)[2]—(B) any person who brings, under the common law or any provision of law other than this section, a civil action or proceeding for monetary or nonmonetary compensation arising out of a claim for which an action would otherwise be cognizable under this section *may not bring an action under this section on that claim*.

22 USC § 6082(f)(1)(B) (emphasis added).

"[T]he starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The Election of Remedies clause is clear that a plaintiff can only bring one action arising out of a claim subject to the Act, under any legal theory.

In 2004, plaintiff and his mother filed a complaint in the U.S. District Court for the Southern District of Florida against a hotel operator related to property in Varadero, Cuba (the "*2004 Club Med Case*"). *See* Complaint [ECF 1], *Glen, et al. v. Club Mediterranee S.A., et al.*, Case No. 1:04-cv-21664-KMM (S.D. Fla., July 8, 2004) (the "*2004 Complaint*" a true and correct copy of which is attached hereto as **Exhibit A**).[3] In that case, plaintiff sued certain Club Med entities asserting causes of action for unjust enrichment, trespass, and violations of the Trading with the Enemy Act, due to club Med's operation of a hotel in Cuba on the property. *See*

---

[2] Paragraph 2 of Section 6082(f) relates only to claims certified by the Foreign Claims Settlement Commission under Title V of the International Claims Settlement Act of 1949 (22 U.S.C. 1643 *et seq.*). Section 1643 provides "for the determination of the amount and validity of claims against the Government of Cuba." Plaintiff states in the Complaint that he "was not eligible to file a claim with the Foreign Claims Settlement Commission." Am. Compl. ¶ 138. Therefore, Section 6082(f)(2) does not relate to plaintiff and there is no limitation on the Election of Remedies rule.

[3] The Court may take judicial notice of publicly available pleadings filed in a U.S. District Court by the same plaintiff in ruling on a motion to dismiss, without converting a Rule 12(b)(6) motion into a Rule 56 (summary judgment) motion. *Southmark Prime Plus, L.P. v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991) ("[F]ederal courts may [] take notice of proceedings in other courts . . . if the proceedings have a direct relation to matters at issue.").

2004 Complaint at pp. 5-8. The gravamen of the 2004 Complaint was that Club Med disregarded plaintiff's ownership interest in the property. *Id.* at p. 1. That lawsuit sought "to require Club Med to compensate the [Glens] for Club Med's wrongful exploitation of their property and its unjust enrichment at their expense." *Id.* at p.2. Plaintiff even raised the Helms-Burton Act in the 2004 Club Med Case to argue that he had the right to sue Club Med for trespass despite not actually owning the property (because it was expropriated by the Cuban government). *See Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1254-1255 (11th Cir. 2016). Indeed, plaintiff's brief in opposition to the motion to dismiss that case acknowledged that the Helms-Burton Act "direct[s] that litigants *choose either to vindicate their rights under Title III or under other laws*" and that "[h]ere, the Glens have elected – in the exercise of their rights expressly recognized by Congress – to bring *only* non-federal common law claims and a claim for declaratory relief." Br. of Plaintiffs in Opp. to Mot. to Dismiss, *Glen v. Club Mediterranee S.A.*, No. 04-cv-21664, [ECF 55] at 8–9 (S.D. Fla. Sept. 7, 2004) (a true and correct copy of which is attached hereto as **Exhibit B**).

The 2004 Club Med Case was ultimately dismissed by the district court (and affirmed by the Eleventh Circuit) at the motion to dismiss stage because the action was precluded by the Act of State doctrine—the alleged injury arose from the official acts of the Cuban government as to property within Cuba that plaintiff did not own as result of the expropriation. 450 F.3d at 1257.

In this case, plaintiff now seeks to recover against third parties for the acts of the Cuban government. In doing so, plaintiff alleges that, "Defendants are engaging in commercial activity that uses or otherwise benefits from Glen's confiscated property." Am. Compl., ¶ 8. Further, plaintiff states that in bringing this action, he seeks "to vindicate his claim to confiscated property . . . ." *Id.* ¶ 10. The Complaint in the instant case seeks the ***same*** relief plaintiff

previously sought in the 2004 Club Med Case. *See* 2004 Complaint, pp. 1-2 and ¶ 22 (Glen sought compensation for the "exploitation of Plaintiffs' beachfront property in Varadero, Cuba without payment or compensation to Plaintiffs."). Even more, in the instant case, plaintiff does not deny that he is seeking remedies under the Act for the same claim raised in the 2004 Club Med Case. Nor would he. There simply is no plausible construction of the allegations in the Complaint that takes it over the Rule 12(b)(6) pleading standard. This case is, therefore, barred by the Election of Remedies clause and should be dismissed with prejudice.

### B.   Plaintiff did not "acquire" the alleged claim to property until after the statutory bar date

Under the Helms-Burton Act, "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action . . . on a claim to confiscated property ***unless such national acquires ownership of the claim before March 12, 1996***." 22 U.S.C. § 6082(a)(4)(B) (emphasis added). Thus, in order to bring a claim under Title III of the Act regarding property that was confiscated before March 12, 1996, plaintiff must allege facts that are plausible on their face to show that he acquired ownership of the alleged claim prior to March 12, 1996. While plaintiff's Complaint asserts that the Cuban government confiscated the Glen Properties "[a]fter January 1, 1959," plaintiff does not allege that he acquired ownership of his purported claim prior to March 12, 1996, as required by the statute. *See* Am. Compl. ¶ 45-48. This omission is no accident: by plaintiff's own admission, he did *not* acquire his purported claim before March 12, 1996. *See* 2004 Complaint, ¶¶ 9-12 (the alleged predecessors in interest to the property were still alive as of March 12, 1996).

According to the Complaint in this action, plaintiff acquired his claim to the Glen Properties through inheritance from his mother, Elvira, and his aunt, Ana Maria, "[w]hen Ana Maria and Elvira died." Am. Compl. ¶ 47. However, both Elvira and Ana Maria were alive as of

March 12, 1996; plaintiff could not have acquired any claim prior to their respective deaths. This fact is supported by plaintiff's prior admissions in public filings in the 2004 Club Med Case. The 2004 Complaint provides that "Elvira de la Vega Glen and Robert M. Glen are the rightful owners of certain beachfront property on the Peninsula de Hicacos in Varadero, Cuba." 2004 Complaint at ¶ 8. Moreover, the 2004 Complaint states that plaintiff's aunt, Ana Maria, died in 1999, at which point "[her] one-half interest in the beachfront property in Varadero, Cuba was inherited by the plaintiff, her nephew, Robert M. Glen." *Id.* at ¶ 12. Because both Elvira and Ana Maria—from whom plaintiff alleges he inherited his interest in the Glen Properties—were alive as of March 12, 1996, plaintiff could not have acquired an ownership interest of his purported claim before then.

The 2004 Complaint also states that, "[b]y proclamations issued on or after January 1, 1959, the beachfront property in Varadero owned by plaintiff Elvira de la Vega Glen and her sister, Ana Maria de la Vega Glen, was illegally expropriated by the Government of Cuba." *Id.* at ¶ 11. Thus, the Glen Properties were confiscated prior to March 12, 1996. Plaintiff therefore cannot assert his claim against defendants under the Act and this lawsuit must accordingly be dismissed with prejudice as barred by the plain terms of the Helms-Burton Act. *See* § 6082(a)(4)(B).

### C.     Plaintiff fails to adequately plead "trafficking"

Plaintiff falls equally short in pleading trafficking, an essential component of a Title III claim. The Act's definition of the term "*traffics*" has two parts. Subparagraph (A) describes three kinds of activities that constitute "trafficking" if conducted "knowingly and intentionally," and without the authorization of any United States national who holds a claim to the property. 22 U.S.C. § 6023(13)(A). Subparagraph (B) lists four types of conduct that, nevertheless, ***do not*** constitute trafficking. *Id.* § 6023(13)(B). Among the conduct that specifically does not constitute

trafficking are "transactions and uses of property *incident to lawful travel* to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." *Id.* § 6023(13)(B)(iii) (emphasis added) (hereinafter the "*Lawful Travel Clause*"). Plaintiff's allegations fail under both subparagraphs of the definition.

### 1.    The Lawful Travel Clause defeats Plaintiff's claim

Under the Lawful Travel Clause, "trafficking" excludes "transactions or uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). Indeed, the Act's language is clear that even benefiting from property otherwise subject to the Act is not "trafficking" if incident to lawful travel. *Id.* ("traffics" does not include . . . transactions . . . incident to lawful travel"). Therefore, if a defendant's purported benefit is incident to lawful travel, there can be no trafficking and, thus, no violation of the Act. *See* 22 U.S.C. § 6082(a)(1)(A) (liability only attaches if a person "traffics in property"). Because the Lawful Travel Clause is part of the definition of "traffics," and trafficking is an essential element of a Title III claim, plaintiff must plead facts showing that defendants' actions fall outside the Lawful Travel Clause. *See Wright v. Portfolio Recovery Affiliates*, No. 09-612-GMS, 2011 U.S. Dist. LEXIS 33612, at *4 (D. Del. Mar. 30, 2011) ("the complaint must do more than allege [plaintiff's] entitlement to relief; rather, it must 'show' such an entitlement with its facts."). Plaintiff has not even attempted to do so. For that reason alone, the Complaint fails to adequately allege a cause of action under Title III.[4]

---

[4] Defendants respectfully disagree with two Southern District of Florida rulings, in which the court declined to dismiss claims against a cruise ship company based on the plaintiff's failure to allege conduct outside the Lawful Travel Clause, and concluded that the clause is an affirmative defense as to which the defendant bears the burden of proof. *See Garcia-Bengochea v. Carnival Corp.*, No. 1:19-cv-21725, 407 F. Supp. 3d 1281, 1286-1288 (S.D. Fla. Aug. 26, 2019) (King,

The touchstone for determining the burden of proof under a statutory cause of action is the statute itself. *Schaffer v. Weast*, 546 U.S. 49, 56 (2005). "[W]hen a statute is silent about the burden of proof, plaintiffs bear the risk of failing to prove their claims." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 186 (3d Cir. 2009) (internal citation and quotations omitted). This default rule does not apply, however, to special exceptions to a statute's prohibitions. *Schaffer*, 546 U.S. at 57. Although Congress frequently drafts statutes with general norms that provide for exceptions, it did not do so with the Lawful Travel Clause. *See e.g.*, *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.*, 525 F.3d 1107, 1112 (11th Cir. 2008) ("Congress is adept at drafting general norms that provide for exceptions, and frequently does so").

Had Congress intended to place the burden of proof for the Lawful Travel Clause on defendants, it could have written it as an exception to Title III's liability-creating provision (*i.e.*, its "general norm"), § 6082(a)(1)(A), by putting it in that same section. Indeed, the statutory language shows that Section 6082 is precisely where any such exceptions would appear. *See* 22 U.S.C. § 6082(a)(1)(A) (Beginning with: "Except as otherwise provided in ***this section*** . . . ." (emphasis added)). Congress instead included the Lawful Travel Clause in the Act's definition of the term "traffics," which is not in Title III at all, much less in its liability-creating section. By doing so, Congress indicated its intent to make the Lawful Travel Clause part of the plaintiff's claim, not an affirmative defense. Thus, the Court should not treat the Lawful Travel Clause as an affirmative defense.

---

J.); *Havana Docks Corp. v. Carnival Corp.*, No. 1:19-cv-21724-BB, slip op. at *7-8 (S.D. Fla. Aug. 28, 2019), Dkt. 47 (Bloom, J.). This Court is not bound by and should not follow these out-of-circuit, district court opinions. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 314 n.12 (3d Cir. 2014) (an out of circuit case is not binding); *and Parker v. Conway*, 581 F.3d 198, 205 n.7 (3d Cir. 2009) ("these out-of-circuit decisions, dicta or not, do not bind us and we decline to follow them"). The statutory construction of the Helms-Burton Act makes clear that Congress intended the Lawful Travel Clause to be an element of the civil remedy—not an affirmative defense.

A plain reading of the Act supports this logical conclusion. The Third Circuit agrees.

> [A]s we recently held in the criminal context, '[w]hether a particular statutory phrase constitutes a defense or an element of the offense . . . turns on whether the statutory definition is such that the crime may not be properly described without reference to the exception.' If that is the case, 'the exception is an element of the crime'; if not, the exception is an affirmative defense.

*Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015) (citing *United States v. Taylor*, 686 F.3d 182, 191 (3d Cir. 2012)). Similarly, the First Circuit has stated that, "[o]ne major reason for this link between exceptions and affirmative defenses is that it is possible to omit exceptions 'from the statute without doing violence to the definition of the offense.'" *United States v. Hartsock*, 347 F.3d 1, 7 (1st Cir. 2003) (citing *United States v. McArthur*, 108 F.3d 1350, 1353 (11th Cir. 1997)). The Supreme Court describes affirmative defenses as defenses that "do[] not serve to negative any facts of the crime." *Patterson v. New York*, 432 U.S. 197, 206-07 (1977).

Section 6082(a)(1)(A) provides, in pertinent part, as follows:

> <u>Except as otherwise provided in this section</u>, **any person that** . . . **traffics** in property . . . . (emphasis added).

The exception to the general prohibition (underlined above) is within the general prohibition section, *i.e.*, Section 6082(a) (Civil Remedy). The general prohibition sets forth the claim (in bold above) that plaintiff seeks to bring here, *i.e.*, that defendants "traffic" in property subject to the Act. In construing this claim, the Court is forced to look to the statute's definition of the term "traffics," which includes the Lawful Travel Clause. § 6023(13)(B) ("[t]he term 'traffics' ***does not include***" "transactions and uses of property incident to lawful travel to Cuba . . . ."). Therefore, the Lawful Travel Clause is necessarily an element of plaintiff's claim under Title III of the Act and must be pled in the Complaint. Plaintiff's failure to plead the Lawful Travel Clause is fatal to plaintiff's case. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56

(2005) (It is "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims.")

In any event, even if Congress had made the Lawful Travel Clause an affirmative defense, the clause still bars plaintiff's claim because, from the face of the Complaint it is clear that defendants' alleged conduct fits squarely within the clause. *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face") (internal citation and quotations omitted); *Ball v. Famiglio*, 726 F.3d 448, 459 (3d Cir. 2013) ("If the allegations in a complaint show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . .") (internal citation and quotation omitted). Plaintiff alleges that defendants facilitated reservations at the Subject Hotels. Am. Compl. ¶¶ 8, 131-135. This allegation, taken as true, shows that the Lawful Travel Clause bars plaintiff's claim because facilitating reservations at hotels in Cuba is "incident to" and "necessary to the conduct of" lawful travel to Cuba. *See* 22 U.S.C. § 6023(13)(B)(iii).

There can be no dispute that U.S. residents may lawfully travel to Cuba. *See* 31 C.F.R. § 515.560(a) (authorizing U.S. persons to travel to Cuba for a variety of reasons, including family visits, official government business, professional research, religious activities, and public performances, among others). Indeed, federal regulations authorize defendants, by general license, to provide travel related services to those U.S. persons lawfully traveling to Cuba. 31 C.F.R. § 515.572(a) ("Persons subject to U.S. jurisdiction are authorized to provide travel services in connection with travel-related transactions involving Cuba authorized pursuant to this part"); *see Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dept. of Treasury*, 606 F. Supp. 2d 59, 64 (D.D.C. 2009) (the "general license" contained in the CACR,

31 C.F.R. 515, subpart E, "broadly authorizes entire classes of transactions"). Congress did not want Title III to create unnecessary barriers to travel to Cuba. To the contrary, Congress believed "access and contact between peoples, particularly free people with the people who are living under a dictatorship, has a tremendous impact . . . ." 141 Cong. Rec. S15320-S15321 (daily ed. Oct. 19, 1995) (Comments of Sen. Dodd). Congress thus sought to define "traffic[king]" in a manner that would "remove *any* liability for . . . *any activities related to lawful travel*." 142 Cong. Rec. H1645, H1656 (daily ed. Mar. 4, 1996) (emphasis added).

Plaintiff does not even attempt to allege that any reservations of the Subject Hotels were secured through a defendant's website and were not incident to lawful travel. This silence is likely because (a) Booking Holdings does not operate any website on which reservations can be secured or information obtained about any hotels; (b) users *cannot book travel* using the Kayak platform, which merely functions as an online search engine for travel listings; and (c) the search functionality provided by Kayak falls within the "informational materials exemption" in the CACR, administered by the OFAC. *See* 31 C.F.R. § 515.206(a).

Nor can there be any question that offering information about hotel lodging in Cuba is both "incident to" and "necessary to the conduct of" lawful travel. *Incident to* means simply "relating to." *Incident*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/incident last visited January 22, 2020); *see also* "*incident to employment*," BLACK'S LAW DICTIONARY 928 (11th ed. 2014) (defining *incident to employment* as "[a] risk that is **related to** or connected with a worker's job duties" (emphasis added)). The term *necessary* has consistently been construed broadly to mean "useful" or "convenient." *See, e.g.*, *Ayestas v. Davis*, 138 S. Ct. 1080, 1093 (2018) ("The term "may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought.") quoting

Black's Law Dictionary (5th Ed. 1979))). *Prometheus Radio Project v. FCC*, 373 F.3d 372, 391-394 (3d Cir. 2004) ("'necessary' means 'convenient,' 'useful,' or 'helpful,' not 'essential' or 'indispensable.'"); *Fish v. Kobach*, 840 F.3d 710, 734 (10th Cir. 2016) ("[C]ourts also have frequently interpreted 'necessary' to mean something less than absolute necessity . . . ."); *Nat. Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1236 (D.C. Cir. 1988) (same).[5]

Hotel lodging in Cuba is both related to and necessary to the conduct of travel to Cuba. Indeed, lawful travel to Cuba would be largely impossible without it. Thus, regardless of whether the Lawful Travel Clause is an element of a plaintiff's Title III cause of action or an affirmative defense, it bars plaintiff's claim here.

### 2. Plaintiff fails to allege that Defendants acted "knowingly and intentionally"

To adequately plead trafficking, plaintiff must allege facts that give rise to a reasonable inference that defendants "knowingly and intentionally" engaged in conduct described in subparagraph (A) of the Act's definition. 22 U.S.C. § 6023(13)(A). *Yagla v. Simon*, Civil Action No. 2:14-cv-181, 2015 U.S. Dist. LEXIS 37623, at *44 (W.D. Pa. Mar. 3, 2015) (finding plaintiff's "conclusory allegations of . . . malice are insufficient" to meet *Iqbal's* plausibility standard). Plaintiff claims that defendants trafficked in confiscated property under Title III by "facilitating bookings" at the Subject Hotels. Am. Compl. ¶¶ 7-8, 124.

---

[5] Even if there was any doubt about the broad meaning of those terms, the Act's legislative history eliminates it. In explaining the need for the Lawful Travel Clause, the Committee Report paraphrased the clause as "remov[ing] any liability for . . . any activities **related to** lawful travel." 142 CONG. REC. H1645-02 at H1656 (emphasis added). *Garcia v. United States*, 469 U.S. 70, 76 (1984) ("[T]he authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which '[represent] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'" citing *Zuber v. Allen*, 396 U.S. 168, 186 (1969)). Congress itself thus interpreted "incident to" and "necessary" as meaning nothing more than "related to."

With respect to defendants' knowledge and state of mind, plaintiff conclusorily alleges that defendants "knowingly trafficked" in the Glen Properties by listing the Subject Hotels on their respective websites. *Id.* ¶¶ 8, 131-133, 135. First, "knowingly trafficked" is not the standard under the Act. Instead, to meet the definition of "traffics" under the Act, a plaintiff must allege that the defendant "knowingly and intentionally" engaged in the conduct described in Section 6023(13)(A).  Thus, a defendant only "traffics" if there is ***both*** the "knowledge and intent" element and the described conduct.  Here, plaintiff does not allege any facts that would plausibly support that defendants "knowingly and intentionally" engaged in any conduct with regard to the Glen Properties.

Second, even if plaintiff's "knowingly trafficked" allegations were sufficient, they are merely conclusory allegations. Such conclusory allegations are disregarded in deciding a motion to dismiss under Rules 12(b)(6). *Hassen v. Gov't of the V.I.*, 861 F.3d 108, 116 (3d Cir. 2017) ("Naked allegations of "negligent" or "purposeful" conduct at the pleading stage, without supporting facts, are to be disregarded."); *Freedman v. City of Allentown, Pa.*, 853 F.2d 1111, 1115 (3d Cir. 1988) (holding allegations that "defendants' actions were 'willful', 'intentional and deliberate'" were conclusory allegations); *Polhill v. FedEx Ground Package Sys.*, 604 F. App'x 104, 107 (3d Cir. 2015) (Conclusory allegations are insufficient to survive a motion to dismiss under *Iqbal* pleading standard); *Steele v. First Nat'l Bank of Mifflintown*, 963 F. Supp. 2d 417, 426 (M.D. Pa. 2013) (granting motion to dismiss where plaintiff asserted nothing more than the "conclusory allegations that [defendant] acted willfully and recklessly and/or negligently") (internal quotations omitted). Because plaintiff fails to allege any facts that could support a reasonable inference that defendants knowingly and intentionally committed any of the acts in

subparagraph (A) of the definition of "traffics," he fails to adequately allege a cause of action under Title III and the Complaint should be dismissed with prejudice.

## II.    The Court Lacks Subject-Matter Jurisdiction to Hear This Case

In any event, the Court must determine whether it even has jurisdiction over the subject-matter of the litigation. Here, on the face of the Complaint alone, the Court should dismiss this case under Rule 12(b)(1) because plaintiff lacks standing under Article III of the United States Constitution. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (a motion to dismiss must be granted pursuant to Rule 12(b)(1) if a court lacks subject-matter jurisdiction to hear a claim). Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims. *Id.*, 678 F.3d at 246 ("It is well-established that a plaintiff's Article III standing is a prerequisite for the federal courts to decide the merits of a suit."). Because Article III standing is a constitutional limitation on the jurisdiction of federal courts, "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-48 (2016).

The "irreducible constitutional minimum" of standing under Article III consists of three elements: (1) an injury-in-fact suffered by the plaintiff, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Spokeo*, 136 S. Ct. at 1547 (2016). At the pleadings stage, this requires the plaintiff to "clearly . . . allege facts demonstrating each element." *Id.* (citation omitted). Failure to establish any one of these standing elements deprives the court of subject-matter jurisdiction to hear the suit. *Id.*

### A.      Plaintiff cannot demonstrate an injury-in-fact

Plaintiff fails to allege facts demonstrating the first or second elements of standing. As to the first, injury-in-fact, "a plaintiff must [set forth] an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (2016) (quotations omitted). To be particularized, an injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. To be concrete, the injury must be *de facto*—*i.e.*, real. *Spokeo*, 136 S. Ct. at 1548.

Here, plaintiff's claim stems from the alleged confiscation of the Glen Properties by the Cuban government, upon which plaintiff alleges the Subject Hotels were constructed. Although that confiscation might constitute concrete and particularized injury to the owner of the Glen Properties, plaintiff fails to plead any facts demonstrating that he owns any right to the Glen Properties. According to the Complaint, "Glen is the owner of property located in Varadero, Cuba"—property that was presumably confiscated pursuant to an act of the Cuban government long before he allegedly inherited the property—and he also "holds a claim to two beachfront properties located in Varadero, Cuba." Am. Compl. ¶¶ 3, 36.  These are mere conclusions, not factual allegations. As such, these allegations fall well short of meeting a plaintiff's burden to clearly allege facts demonstrating injury-in-fact.

### B.      Plaintiff fails to satisfy the causation element of standing

Even if confiscation of the Glen Properties could constitute a concrete injury to plaintiff, plaintiff also fails to satisfy the second, causation element of constitutional standing. In order to satisfy the causation element at this stage in the litigation, a plaintiff must allege a "nexus" or "causal connection" between the plaintiff's injury and the defendant's conduct. *In re Schering-Plough Corp.*, 678 F.3d at 247-49 (holding dismissal for lack of standing was warranted where plaintiff "has failed to show the requisite causal relationship between the alleged misconduct and

its alleged injury"). That is, the plaintiff must demonstrate that his alleged injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quoting *Lujan*, 504 U.S. at 560). Thus, a plaintiff lacks standing when an independent source caused the plaintiff to suffer injury. *See id.*

Plaintiff fails to allege any "causal connection" between defendants' challenged conduct—*i.e.*, "facilitating bookings" at the Subject Hotels, Am. Compl. ¶ 8—and his inadequately alleged injury—*i.e.*, confiscation of the property by the Cuban government without paying compensation to the then-owners. *Id.* ¶¶ 4, 45, 50. Defendants played no role in bringing about plaintiff's alleged injury. That alleged injury occurred at least fifty years ***before*** defendants' alleged conduct (decades before defendants even came into existence), and was caused by the Cuban government. Indeed, as stated by plaintiff, "the Cuban government maintains possession of the Glen Properties." *Id.* ¶ 49.

Because plaintiff's claimed injury was caused by "the independent action of [a] third party not before the court," and would have occurred regardless of defendants' action, plaintiff lacks standing to bring this action against defendants. *Lujan*, 504 U.S. at 560-61. Therefore, this case should be dismissed with prejudice pursuant to Rule 12(b)(1).

## CONCLUSION

The Court should dismiss plaintiff's Amended Complaint with prejudice for the foregoing reasons, as well as the reasons raised by the other defendants in their respective motions to dismiss filed in this case.[6]

---

[6] *See 1st Source Bank v. Merritt*, 759 F. Supp. 2d 505, 509 (D. Del. 2011) (considering arguments incorporated by reference from a co-defendant's brief in support of their motion to dismiss).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

BAKER MCKENZIE LLP
Michael A. Duffy
Michael C. McCutcheon

300 East Randolph Street
Suite 5000
Chicago, IL  60601
(312) 861-8000
Michael.Duffy@bakermckenzie.com
Michael.McCutcheon@bakermckenzie.com

L Andrew S. Riccio
425 Fifth Avenue
New York, NY  10018
(212) 626-4100
Andrew.Riccio@bakermckenzie.com
*Admitted pro hac vice*

February 7, 2020

*/s/ John P. DiTomo*
John P. DiTomo (#4850)
Barnaby Grzaslewicz  (#6037)
1201 N. Market Street
Wilmington, DE  19899-1347
(302) 658-9200
jditomo@mnat.com
bgrzaslewicz@mnat.com

*Attorneys for Defendants Kayak Software
Corporation and Booking Holdings Inc.*