# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERT M. GLEN,                             :
                                            :
        Plaintiff,                      :
                                            :
       v.                              :      C.A. No. 19-1809-LPS
                                            :
TRIPADVISOR LLC, TRIPADVISOR, INC.,         :
ORBITZ, LLC, TRIP NETWORK, INC. D/B/A       :
CHEAPTICKETS, KAYAK SOFTWARE                :
CORPORATION, BOOKING HOLDINGS, INC.,        :
EXPEDIA, INC., EXPEDIA GROUP, INC.,         :
HOTEL.COM, L.P., HOTEL.COM, GP, LLC,        :
AND TRAVELSCAPE LLC D/B/A                   :
TRAVELOCITY,                                :
                                            :
        Defendants.                     :
                                            :

ROBERT M. GLEN,                             :
                                            :
        Plaintiff,                      :
                                            :
       v.                              :      C.A. No. 19-1870-LPS
                                            :
VISA INC., VISA U.S.A. INC., VISA INTER-    :
NATIONAL SERVICE ASSOCIATION,               :
MASTERCARD INCORPORATED, AND                :
MASTERCARD INTERNATIONAL                    :
INCORPORATED,                               :
                                            :
        Defendants.                     :
                                            :

Jessica Zeldin, ANDREWS & SPRINGER LLC, Wilmington, DE

Craig A. Boneau, Ryan M. Goldstein, and Scott Saldana, REID COLLINS & TSAI LLP, Austin, TX

      Attorneys for Plaintiff

Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE

Sean Haran, Jacob Gardener, and Derek Borchardt, WALDEN MACHT & HARAN LLP, New York, NY

> Attorneys for Defendants Tripadvisor LLC and Tripadvisor, Inc.

John P. DiTomo, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE

Michael A. Duffy and Michael C. McCutcheon, BAKER MCKENZIE LLP, Chicago, IL

L Andrew S. Riccio, BAKER MCKENZIE LLP, New York, NY

> Attorneys for Defendants Kayak Software Corporation and Booking Holdings Inc.

Beth Moskow-Schnoll and Brittany M. Giusini, BALLARD SPAHR LLP, Wilmington, DE

David D. Shank, Cheryl Joseph, and Jane Webre, SCOTT DOUGLASS & MCCONNICO LLP, Austin, TX

> Attorneys for Defendants Orbitz, LLC, Trip Network, Inc. d/b/a CheapTickets, Expedia, Inc., Expedia Group, Inc., Hotels.com, L.P., Hotels.com GP, LLC, and Travelscape LLC d/b/a Travelocity

Beth Moskow-Schnoll and Brittany M. Giusini, BALLARD SPAHR LLP, Wilmington, DE

Martin Domb, AKERMAN LLP, New York, NY

Augusto E. Maxwell, AKERMAN LLP, Miami, FL

> Attorneys for Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association

Robert S. Brady, Kevin A. Guerke, and Michael S. Neiburg, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE

Nicholas P. Crowell, SIDLEY AUSTIN LLP, New York, NY

Kwaku A. Akowuah, David W. McAloon, and Emmanuel Hampton, SIDLEY AUSTIN LLP, Washington, DC

    Attorneys for Defendants Mastercard Incorporated and Mastercard International Incorporated


Carmella P. Keener, COOCH AND TAYLOR, P.A., Wilmington, DE

Samuel J. Dubbin, DUBBIN & KRAVETZ, LLP, Coral Gables, FL

    Attorneys for *Amici Curiae* Dan Burton and Robert Torricelli

---

## <u>MEMORANDUM OPINION</u>

March 30, 2021
Wilmington, Delaware

**STARK, U.S. District Judge:**

Pending before the Court are Defendants Tripadvisor LLC and Tripadvisor, Inc. (collectively, "Tripadvisor"), Kayak Software Corporation and Booking Holdings Inc. (collectively, "Booking"), Orbitz, LLC, Trip Network, Inc. d/b/a CheapTickets, Expedia, Inc., Expedia Group, Inc., Hotels.com, L.P., Hotels.com GP, LLC, and Travelscape LLC d/b/a Travelocity (collectively, "Expedia"), Visa Inc., Visa U.S.A. Inc., and Visa International Service Association (collectively, "Visa"), and Mastercard Incorporated and Mastercard International Incorporated's (collectively, "Mastercard") motions to dismiss, filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (*See, e.g.*, D.I. 36, 38, 40)[1] The Court has reviewed Plaintiff, Robert M. Glen's ("Plaintiff" or "Glen"), operative complaints (*see, e.g.*, D.I. 33), the parties' briefs (*see, e.g.*, D.I. 37, 39, 41, 43, 46-48, 54), notices of subsequent authority (*see, e.g.*, D.I. 52, 55-58; *see also* C.A. No. 19-1870 D.I. 60), the parties' supplemental briefs (*see, e.g.*, D.I. 62-65), and the *amicus* brief (D.I. 44-1).[2] The Court also held a telephonic hearing on December 7, 2020, at which it heard argument from both sides and from *amici*, who appear in support of Plaintiff. (*See* D.I. 67) ("Tr.")

For the reasons stated below, the Court will grant Defendants' motions to dismiss.

## I.    BACKGROUND

Glen is a naturalized citizen of the United States. (D.I. 33 ¶ 11) In the late 1950s, Glen's mother and aunt owned two contiguous plots of beachfront land ("the Subject Properties")

---

[1] Unless otherwise noted, all citations to the docket index refer to C.A. No. 19-1809.

[2] The parties have litigated whether *amici* should be permitted to participate in these proceedings. (*See* D.I. 44, 45, 49) The Court permitted *amici* to appear and present oral argument. The Court has found the *amicus* brief helpful to its decision on the motions to dismiss and, thus, exercises its discretion to grant *amici*'s motion for leave. *See Wortham v. KarstadtQuelle AG*, 153 F. App'x 819, 827 (3d Cir. 2005) ("[A] district court's decision to accept or reject an *amicus* filing is entirely within the court's discretion.").

located in Varadero, Cuba.  (*Id.* ¶¶ 37-48)  In connection with the Cuban revolution, the communist Cuban government confiscated the Subject Properties.  (*Id.* ¶ 49)  When Glen's aunt and mother died in 1999 and 2011, respectively, their claims to the Subject Properties passed solely to Glen by inheritance.  (*Id.* ¶ 51)  The Subject Properties have been used for beachfront hotels ("the Subject Hotels") since at least 1996.  (*Id.* ¶ 53)  The Cuban government maintains possession of the Subject Properties, and worked with hotel chains to build, develop, and operate the Subject Hotels on the Subject Properties, without paying any compensation to Glen or his family.  (*Id.* ¶¶ 54, 55)

Defendants Tripadvisor, Booking, and Expedia operate travel booking websites; they profit when website users book guestrooms at the hotels listed on these Defendants' websites. (*Id.* ¶¶ 66, 80, 114, 115, 121, 122, 124)  Within the two years prior to the filing of this action, these Defendants provided online booking services for the Subject Hotels in Cuba.  Travelers could book guestrooms at the Subject Hotels via these Defendants' websites.  (*Id.* ¶¶ 101-110, 119, 120, 130-32)

Defendants Visa and Mastercard operate cross-border payment networks and earn a fee when merchants utilize their network services to complete business transactions.  (C.A. No. 19-1870 D.I. 24 ¶¶ 58-65)  These Defendants offered network services to merchants in Cuba, including the Subject Hotels.  (*Id.* ¶¶ 66-67)  The guests of the Subject Hotels were able to pay for stays using credit cards branded by these Defendants.  (*Id.* ¶¶ 68-70)  These Defendants collected fees derived from these uses of credit cards.  (*Id.*)

Glen initiated the two instant civil actions on September 26 and October 4, 2019, respectively.  He filed the operative complaints on March 16, 2020.  In those complaints, Glen asserts a single cause of action against Defendants under the Cuban Liberty and Democratic

Solidarity (LIBERTAD) Act of 1996 ("Helms-Burton Act"), 22 U.S.C. § 6021 *et seq.* (*See* D.I. 33 ¶¶ 134-48) The Helms-Burton Act provides U.S. nationals who hold a claim to property that was confiscated by the communist Cuban government with a private cause of action against persons who have "trafficked" in such property. *See* 22 U.S.C. § 6082(a).

Defendants filed the pending motions to dismiss on May 11, 2020. After briefing was completed, on August 3, 2020 the United States District Court for the Northern District of Texas issued a decision in *Glen v. Am. Airlines, Inc.*, No. 4:20-cv-482-A D.I. 93 ("*Glen I*"), dismissing Glen's Helms-Burton Act claim against American Airlines for alleged "trafficking" in the Subject Properties by allowing customers to book accommodations at the Subject Hotels on its hotel booking website.[3] *See generally Glen v. Am. Airlines, Inc.*, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020). On August 28, 2020, Glen appealed the district court's decision to the United States Court of Appeals for the Fifth Circuit (*see Glen I* D.I. 95), which remains pending as of the date of this memorandum opinion. Pursuant to the Court's Order (D.I. 60), the parties submitted supplemental briefs (*see, e.g.*, D.I. 62-65) addressing the potential impact of the dismissal in *Glen I* on the pending motions here.

## II.    LEGAL STANDARDS

### A.    Issue Preclusion (Also Known As "Collateral Estoppel")

"[W]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015) (internal citation omitted).

---

[3] In his supplemental briefs, Glen does not dispute that the Subject Properties and the Subject Hotels in this case are the same properties and hotels at issue in *Glen I*.

Under Third Circuit law, issue preclusion applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal citation omitted). The party asserting issue preclusion bears the burden of proving its applicability to the case at hand. *See Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 147 (3d Cir. 2007).

Under the doctrine of non-mutual issue preclusion, a litigant "may [] be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary." *Peloro v. United States*, 488 F.3d 163, 175 (3d Cir. 2007). "For defensive collateral estoppel – a form of non-mutual issue preclusion – to apply, the party to be precluded must have had a 'full and fair' opportunity to litigate the issue in the first action." *Id.* (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979)).

## B.    Article III Standing

The "irreducible constitutional minimum" of standing consists of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). The "[f]irst and foremost" of standing's three elements is "injury in fact." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

### C.   Motion To Dismiss Under Federal Rule Of Civil Procedure 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits the dismissal of an action for "lack of subject matter jurisdiction." A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). When considering a facial attack, the court accepts the plaintiff's well-pleaded factual allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual attack, the court may weigh and consider evidence outside the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

### D.   Motion To Dismiss Under Federal Rule Of Civil Procedure 12(b)(6)

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

## III.    DISCUSSION

### A.    Issue Preclusion

In *Glen I*, the United States District Court for the Northern District of Texas granted American Airlines' motion to dismiss because (i) Glen did not have Article III standing to sue; (ii) Glen failed to allege acquisition of his claim before the statutory bar date of 22 U.S.C. § 6082(a)(4)(B); and (iii) Glen failed to allege scienter, required under § 6023(13)(A). *See* 2020 WL 4464665, at *3, 4, 6.

6

In their supplemental briefs, Defendants contend that Glen is "precluded from relitigating the same Helms-Burton Act issues that were previously decided against him." (D.I. 62 at 1) In response, Glen asserts several bases on which issue preclusion should not apply, including (i) issue preclusion should not apply to non-jurisdictional issues in this case; (ii) the issues in this case are different from those in *Glen I*; and (iii) *Glen I* was wrongly decided and is now on appeal. (*See* D.I. 63, 64)

The Court agrees with Glen that he is not precluded here from relitigating the issues decided in *Glen I*.

### 1.   Applicability of issue preclusion to non-jurisdictional issues

Under Third Circuit law, when litigants raise multiple issues that are potentially dispositive of a case, a court's independently sufficient alternative findings may be given preclusive effect, even though each of the alternative findings is technically not "essential" to the final judgment. *See Jean Alexander*, 458 F.3d at 254-55.  However, when a court determines that it lacks jurisdiction to hear the plaintiff's claims, "any findings made with respect to the merit of those claims are not essential to the judgment and cannot support the application of collateral estoppel." *Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 475 (3d Cir. 1997).  The *Jean Alexander* decision did not displace the holdings of *Hawksbill Sea Turtle* because the *Jean Alexander* Court explicitly recognized that it was not considering a case involving jurisdictional issues. *See Jean Alexander*, 458 F.3d at 253 ("Here, both of the TTAB's alternative holdings related to the merits of the cancellation action, and there was no doubt as to the Board's power to rule on both.  Consequently, *Hawksbill Sea Turtle* does not control.").

Hence, since the *Glen I* Court determined that it lacked subject matter jurisdiction, *see* 2020 WL 4464665, at *3, its findings with respect to the non-jurisdictional issues – including

Glen's failure to acquire his claim before the statutory bar date and his failure to allege scienter –
do not preclude Glen from relitigating these issues in this case.

### 2. Applicability of issue preclusion to Article III standing

Neither *Hawksbill Sea Turtle* nor *Jean Alexander* prevent the Court from giving

preclusive effect to the standing issue decided in *Glen I*.[4]  Glen does not dispute that the standing

issue was actually litigated, and that he was fully represented in *Glen I*.[5]  However, Glen

contends that this Court should perform an independent analysis rather than applying issue

preclusion because (i) the alleged injury in this case is not identical to that litigated in *Glen I*[6]

(*see* D.I. 64 at 2), and (ii) the decision of *Glen I* is not final in view of the pending appeal, as well

as subsequent authority reaching an opposite conclusion (*see* D.I. 63 at 3).

With respect to the identicality of injury in fact, the Court is not persuaded that the injury

alleged in this case is materially different from that alleged in *Glen I*.  Glen concedes that the

injury he allegedly suffers here due to the actions of Tripadvisor, Booking, and Expedia is the

same injury he alleged in *Glen I*, but he contends the injury is different as to Mastercard and

Visa, as his claim against them "isn't about booking." (Tr. at 35)  However, in both *Glen I* and

this action, Glen has alleged the same injury, namely, that without his authorization or providing

---

[4] Courts have applied issue preclusion to Article III standing.  *See, e.g.*, *N.M. Off-Highway Vehicle Alliance v. United States Forest Serv.*, 702 F. App'x 708, 710 (10th Cir. 2017); *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015); *Mrazek v. Suffolk Cty. Bd. of Educ.*, 630 F.2d 890, 896 n.10 (2d Cir. 1980).

[5] Glen contends that "issues reached by the AA Decision [i.e., *Glen I*] were not fully litigated in any meaningful sense" because "Glen did not have an opportunity to take any merits discovery." (D.I. 64 at 2)  Standing issues are, however, frequently litigated at the pleading stage based on the facts alleged in the complaint.

[6] Glen does not contest the identicality of causation and redressability in the context of standing.

8

compensation to him, Defendants – including Mastercard and Visa – "have knowingly trafficked in the Glen Properties by engaging in commercial activity using or otherwise benefiting from the confiscated property." (C.A. No. 19-1870 D.I. 24 at ¶¶ 77-83; *see also Glen I* D.I. 47 at ¶¶ 164-70) Glen has not alleged any distinct injury inflicted by the credit card company defendants that is not also allegedly inflicted by the booking agency defendants.[7]

Turning to the finality issue, there is "no bright-line rule" under Third Circuit law regarding what constitutes a "final judgment" for issue preclusion. *Free Speech Coalition, Inc. v. Att'y Gen. of the United States*, 677 F.3d 519, 541 (3d Cir. 2012). Instead, the law requires that a prior adjudication of an issue in another action must be "sufficiently firm" to be accorded preclusive effect. *Id.* Factors that courts consider when determining whether the prior determination was "sufficiently firm" include: "whether the parties were fully heard, whether a reasoned opinion was filed, and whether that decision could have been, or actually was, appealed." *Id.* (quoting *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)). Essentially, finality "may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Dyndul v. Dyndul*, 620 F.2d 409, 412 n.8 (3d Cir. 1980) (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)).

In the Court's view, the determination of the standing issue in *Glen I* falls short of being "sufficiently firm" for the purpose of issue preclusion. After *Glen I* was decided, the issue of

---

[7] Glen also contends that the issues are different because Defendants in this action "ignored Glen's pre-suit notice letter and brazenly continued to facilitate reservations at the Subject Hotels, for a profit, without Glen's permission," whereas in *Glen I*, "there were no bookings that occurred after the notice letter was received." (D.I. 64 at 2; *see also* Tr. at 33-34) The *Glen I* Court took this fact into consideration only with respect to the scienter issue, not the standing issue. *See Glen I*, 2020 WL 4464665, at *6. Thus, this factual difference is irrelevant to the application of issue preclusion to the standing issue.

standing in actions brought under the Helms-Burton Act was considered in multiple other cases, and the courts addressing the issue uniformly reached the opposite conclusion, finding that the plaintiffs in the subsequent cases had Article III standing. *See, e.g., Havana Docks Corp. v. Carnival Corp.*, 2020 WL 5517590, at *8 (S.D. Fla. Sept. 14, 2020); *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1190-95 (S.D. Fla. 2020); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 484 F. Supp. 3d 1212, 1226-31 (S.D. Fla. 2020); *Iglesias v. Ricard*, 2020 U.S. Dist. LEXIS 164117, at *25-29 (S.D. Fla. Aug. 17, 2020). Although *Glen I* and the subsequent cases bear some factual distinctions, the inconsistent rulings suggest, at the least, that the issue of whether the plaintiff has Article III standing in actions brought under the Helms-Burton Act is not settled.

That Glen has appealed the *Glen I* decision, although not dispositive on the question of finality, further weighs against the application of issue preclusion. *See Sound View Innovations, LLC v. Walmart Inc.*, 2019 WL 7067056, at *4 (D. Del. Dec. 23, 2019), *report and recommendation adopted*, 2020 WL 136864 (D. Del. Jan. 13, 2020) (finding that possible appellate reversal, combined with unsettled state of law, weighs against application of issue preclusion). While a prior decision may be treated as issue preclusive even when it is on appeal, doing so could "create later problems if a first judgment, relied on in a second proceeding, is reversed on appeal."[8] *United States v. 5 Unlabeled Boxes*, 572 F.3d 169, 175 (3d Cir. 2009); *see also Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983) (finding that

---

[8] Defendants cite cases for the proposition that "the 'actual entry of a final judgment' is 'final' for purposes of collateral estoppel," "notwithstanding any appeal." (D.I. 62 at 3) None of the cited cases supports the proposition that the Court ***must*** apply issue preclusion to a decision that is on appeal.

interlocutory order did not give rise to collateral estoppel on tax code interpretation when government had not been given opportunity to appeal).

In sum, the standing issue here is not one that the Court "sees no really good reason for permitting it to be litigated again." *Dyndul*, 620 F.2d at 412 n.8.  Hence, Glen is not precluded from relitigating the standing in this action.

### 3.     Article III standing

Defendants contend that Glen does not have Article III standing because he has failed to allege any concrete injury that is fairly traceable to Defendants' conduct. (*See, e.g.*, D.I. 37 at 5-8)  According to Defendants, the only injury Glen could have asserted is the confiscation of the Subject Properties, which is traceable to the Cuban government, not Defendants. (*See id.*)  Defendants also argue that since Glen did not have an ownership interest in the Subject Properties, he cannot claim that he was harmed by the alleged commercial exploitation (or "trafficking") of the Subject Properties by Defendants. (*See* D.I. 41 at 7)[9]

Glen does not dispute that he did not suffer a tangible injury.[10]  However, Glen contends that the intangible injury he has alleged in the operative complaints – Defendants' trafficking in the Subject Properties without his authorization and without making any payment of

---

[9] Glen alleges in the operative complaints that he is the "owner" of – not just the owner of a *claim* to – the Subject Properties. (*See, e.g.*, D.I. 33 at ¶¶ 37, 51, 145)  The Court does not have to accept those allegations as true, because ownership is a legal issue.  The United States Court of Appeals for the Eleventh Circuit has held that, under the act of state doctrine, Glen's ownership interest in the confiscated properties in Cuba was extinguished by the expropriations committed by the Cuban government. *See Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006).  The Court does not need to address the ownership issue because, as will be discussed, the Helms-Burton Act provides Glen with a substantive right as the owner of a *claim* to the confiscated properties.

[10] Glen does not assert that his alleged injury stemmed from the confiscation of the Subject Properties. (*See* D.I. 43 at 13)

compensation to him – satisfies the requirements for Article III standing. (*See* D.I. 43 at 13)
The Court agrees with Glen.

An injury does not have to be "tangible" in order to be "concrete." *Horizon*, 846 F.3d at
637. There are two tests for whether an intangible injury is "concrete." The first asks whether
"'an alleged intangible harm' is closely related 'to a harm that has traditionally been regarded as
providing a basis for a lawsuit in English or American Courts.'" *Id.* (quoting *Spokeo*, 136 S. Ct.
at 1549). The second asks "whether Congress has expressed an intent to make an injury
redressable." *Horizon*, 846 F.3d at 637; *see also Spokeo*, 136 S. Ct. at 1549. Here, the Court
does not need to address the first test,[11] as Glen's alleged injury satisfies the second test.

In enacting the Helms-Burton Act, Congress has expressed an intent to make Glen's
alleged injury redressable. Congress explicitly recognized that the legal system "lacks fully
effective remedies for . . . unjust enrichment from the ***use*** of wrongfully confiscated property by
governments and private entities ***at the expense of the rightful owners of the property***." 22
U.S.C. § 6081(8) (emphasis added). Hence, in creating the cause of action in Title III of the
Helms-Burton Act, Congress provided the rightful owners of the confiscated properties with the
right to be compensated from those who have economically exploited the properties, a remedy
that had previously been unavailable or ineffective. *See Spokeo*, 136 S. Ct. at 1549 ("Congress
may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were
previously inadequate in law.") (internal citation and quotation marks omitted).[12] Therefore,

---

[11] Glen does not address the first test in his briefs. Nonetheless, at the hearing he argued that his
alleged injury would also satisfy the first test because it is similar to an "unjust enrichment
claim," which "has existed in our jurisprudence for many, many, many years." (Tr. at 39)

[12] In this respect, the Helms-Burton Act is distinguishable from the statute at issue in *Spokeo*,
which provides that "[a]ny person who willfully fails to comply with any requirement imposed
under this subchapter with respect to any consumer is liable to that consumer." 15 U.S.C.
§ 1681n(a). Since the "requirement imposed under this subchapter" regulated the procedures

contrary to Defendants' contention (*see* D.I. 41 at 7), although Glen was not the legal owner of the Subject Properties, the legally cognizable right provided by the Helms-Burton Act to the "rightful owners" of properties like the Subject Properties allows Glen to assert a concrete injury based on Defendants' alleged "trafficking" in the Subject Properties.  Moreover, his alleged injury satisfies the particularity requirement because it is entirely personal to Glen's interest in his claim to the Subject Properties.  The alleged injury also satisfies the actuality requirement because "both the challenged conduct and the attendant injury have already occurred." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1118 (9th Cir. 2017).

Glen's alleged injury is fairly traceable to Defendants' conduct.  Since Glen alleges he was harmed by Defendants' trafficking in the Subject Properties without his authorization or paying compensation to him, it follows that he would not have been harmed if Defendants had not trafficked in the Subject Properties.  The chain of causation is also supported by the legislative findings in the Helms-Burton Act.  *See Spokeo*, 136 S. Ct. at 1549 ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.") (internal citation omitted).  In enacting Title III of the Helms-Burton Act, Congress did not intend for the causal link to stop at the Cuban government's confiscation.  Instead, it observed that the rightful owners' injury stemmed from both the Cuban government's confiscation of the property and subsequent traffickers' use of that confiscated property.  *See* 22 U.S.C. § 6081(8) (". . . lacks fully effective remedies for the wrongful confiscation of property *and* for unjust enrichment from the use of wrongfully confiscated property . . . at the expense of the rightful owners of the property") (emphasis added).

---

followed by consumer reporting agencies, *see* 15 U.S.C. § 1681 *et seq.*, the statute did not in and of itself vest in a consumer any substantive right beyond a private cause of action against a consumer reporting agency's "bare procedural violation." *See Spokeo*, 136 S. Ct. at 1550.

Also, Glen's alleged injury can be redressed by a favorable judgment. A favorable judgment would entitle Glen to money damages as specified in the Helms-Burton Act (*see* 22 U.S.C. § 6082(a)(1)(A)(i)), compensation that would redress the harm Glen allegedly suffered from Defendants' economic exploitation of the Subject Properties.

In sum, at this stage, Glen has met his burden of establishing injury in fact, causation, and redressability, as required for Article III standing. Hence, the Court will not dismiss the action for lack of subject matter jurisdiction under Rule 12(b)(1).

**B.      Failure To State A Claim**

Defendants contend that the Court should dismiss this case for failure to state a claim because, *inter alia*, Glen has failed to plausibly allege that (i) he acquired the claim to the Subject Properties before March 12, 1996, as required by 22 U.S.C. § 6082(a)(4)(B); and (ii) Defendants knowingly and intentionally trafficked in the Subject Properties, as required by § 6023(13)(A). (*See, e.g.*, D.I. 37 at 8, 12). The Court addresses both issues below.

**1.      Acquisition of Subject Properties before March 12, 1996**

Defendants argue that the Court should dismiss this case because Glen did not acquire his claim to the Subject Properties before March 12, 1996. (*See, e.g., id.* at 8) The relevant provision of the Helms-Burton Act provides:

> In the case of property confiscated before March 12, 1996, a
> United States national may not bring an action under this section
> on a claim to the confiscated property unless such national acquires
> ownership of the claim before March 12, 1996.

22 U.S.C. § 6082(a)(4)(B). Glen does not dispute that the Subject Properties were confiscated before March 12, 1996, nor that he obtained ownership of his claim to the Subject Properties after March 12, 1996. (*See* D.I. 33 at ¶¶ 49, 51) However, he contends that the statute does not bar his action because he obtained the ownership of the claim to the Subject Properties by

inheritance. (*See* D.I. 43 at 19; *see also* D.I. 33 at ¶ 51)  The Court agrees with Defendants that Glen's action is barred and he has, therefore, failed to state a claim on which relief may be granted.

Glen's contention that acquiring a claim by inheritance is an exception to the statute's requirement that actionable claims must be acquired before March 12, 1996 is inconsistent with the unambiguous language of the statute.  On its face, the statute is clear that no United States national may bring an action unless he acquired ownership of the claim before March 12, 1996. The statute makes no distinctions with respect to the method of acquiring the claim.  The statue is also clear that the United States national who acquired the ownership of the claim must be the same United States national who brings the action, not the predecessor of the United States national who brings the action.  22 U.S.C. § 6082(a)(4)(B) (". . . unless *such* national acquires ownership . . .") (emphasis added).  Thus, since Glen did not acquire the ownership of the claim before March 12, 1996, by inheritance or any other manner, he falls within the category of "United States nationals" who "may *not* bring an action under this section." *Id.* (emphasis added).

Glen urges the Court to read the word "acquire" as meaning "to get by one's own efforts," which would result in the statutory term "acquire" not including "passively inherit[ing] the claim." (D.I. 43 at 20-21)  Even assuming there were ambiguity in the word "acquire" (and the Court does not believe there is), the Court would not adopt Glen's proposed interpretation because it is inconsistent with the interpretation given to the statute by the United States Department of Justice, to which the Court would defer. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").

In the published notice summarizing the provisions of Title III of the Helms-Burton Act, the Department of Justice stated that "[u]nder section 302(a)(4) [codified as 22 U.S.C. § 6082(a)(4)], if the property was confiscated before March 12, 1996, the U.S. national bringing the claim ***must have owned*** the claim before March 12, 1996." (*See* D.I. 46 at 4) (citing 61 Fed. Reg. 97, 24955 (May 17, 1996) (emphasis added)) The word "own" is not limited to "by one's effort," as Glen suggests, but is, instead, sufficiently broad to cover ownership by inheritance.[13]

Glen and *amici* also contend that interpreting the statute in a way that bars Glen's action would lead to an "absurd result" that "contravenes the [Helms-Burton] Act's language, context, and legislative intent." (D.I. 43 at 19-25) In the context of statutory construction, an absurd interpretation is one that defies rationality or renders the statute nonsensical and superfluous. *See Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020); *see also United States v. Beskrone*, 620 B.R. 73, 84-85 (D. Del. 2020) ("The application of the statutory language does not result [] in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense.") (internal quotation marks and citation omitted); *Hutchins v. Bayer Corp.*, 2009 WL 192468, at *6 (D. Del. Jan. 23, 2009) ("[E]ven an unreasonable result may not 'sink to the level' of 'absurd' or 'bizarre.'"). The Court's plain language interpretation does not sink to such levels. According to Glen and *amici*, the Helms-Burton Act was drafted with the intention "to eliminate any incentive that might otherwise exist to transfer claims to confiscated property to U.S. nationals in order to take advantage of the remedy created by this section." (D.I. 43 at 22-23) *Amici* further assert that "[a] claim inherited

---

[13] It is not clear whether Glen's lawsuits would be saved even under his proposed interpretation. While his reading would seem to mean the "unless" part of § 6082(a)(4) would not apply to him, this would not necessarily transform the statute into an affirmative authorization for him to press his claim.

from a family member was never at issue." (D.I. 44-1 at 7)  However, the surrounding statutory language suggests that "[eliminating the] marketplace for the buying and selling of Title III claims" may not be the only reason why the statute was so drafted.  (*See id.*)  If Congress had solely intended to eliminate the incentive for claim transactions, it could have drafted § 6082(a)(4)(B) the same way as § 6082(a)(4)(C), which explicitly bars actions brought by those who "acquire[d] ownership of a claim to the property by assignment for value."[14]  That two adjacent statutory provisions were drafted in different ways suggests that Congress may have had other intentions for § 6082(a)(4) beyond those discernible from the legislative history cited by Glen and *amici*.  *See Duncan v. Walker*, 533 U.S. 167, 173 (2001) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal citation omitted).  Indeed, the cited legislative history explains that § 6082(a)(4) was "intended, ***in part***, to eliminate any incentive that might otherwise exist to transfer claims to confiscated property to U.S. nationals in order to take advantage of the remedy created by this section." H.R. Rep. No. 104-468, at 59 (1996) (emphasis added).  Glen and *amici* appear to have ignored the phrase "in part" and treat this ***partial*** explanation of Congress' motives as though it were the whole.

Therefore, although the interpretation based on the plain language of the statute would, to some extent, "curtail [Congress'] own stated desire for claimants to seek redress in U.S. courts and hold traffickers accountable for their unlawful conduct" (D.I. 43 at 22), the Court does not

---

[14] Section 6082(a)(4)(C) provides: "In the case of property confiscated on or after March 12, 1996, a United States national who, after the property is confiscated, acquires ownership of a claim to the property by assignment for value, may not bring an action on the claim under this section."

find that to be an absurd result. It may not be what Congress intended or desired and it may be difficult to understand. Still, "[a]s long as Congress could have any conceivable justification for a result – even if the result carries negative consequences – that result cannot be absurd." *Riccio*, 954 F.3d at 588.

Here, conceivable justifications for the date-of-acquisition requirement exist. For example, judicial economy. By barring post-enactment transfers of existing claims for properties confiscated before the enactment date, Congress limited the extent to which federal courts will need to delve into intricacies of state inheritance laws and complexities of foreign law that could be implicated by the need to determine whether plaintiffs truly "own the claim" to a property at issue. (*See* D.I. 48 at 5; *see also* Tr. at 73-75) Congress minimized the chances that federal courts will have to confront competing claims and difficult to obtain (if even existing) records. (*See* Tr. at 82) Also, Congress may have wanted to cap the number of claims that could possibly be brought, or may have felt that generations removed from the direct confiscation were not sufficiently harmed by trafficking in a way that should be remediated through a private cause of action for damages. Of course, the time bar of the statute also helps prevent a market arising for the claims – a debatable but not absurd policy goal.

"[L]egislative history can never defeat unambiguous statutory text." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1750 (2020). Where, as here, Congress adopted statutory language with "plain and settled meanings," "a court's job is at an end," because "[t]he people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Id.* at 1743, 1749.

Hence, consistent with every other court that has considered the issue, this Court will dismiss Glen's actions because the statute requires that he acquire the ownership of the claim to

the Subject Properties before March 12, 1996, something he has failed to plausibly allege. *See, e.g., Gonzalez v. Amazon.com, Inc.*, 835 F. App'x 1011, 1011-12 (11th Cir. 2021); *Garcia-Bengochea v. Royal Caribbean Cruises, Ltd.*, 2020 WL 6081658, at *3 (S.D. Fla. Oct. 15, 2020); *Glen I*, 2020 WL 4464665, at *4; *Garcia-Bengochea v. Carnival Corp.*, 2020 WL 4590825, at *4 (S.D. Fla. July 9, 2020); *Gonzalez v. Amazon.com, Inc.*, 2020 WL 2323032, at *2 (S.D. Fla. May 11, 2020); *Del Valle v. Trivago GmbH*, 2020 WL 2733729, at *5 n.2 (S.D. Fla. May 26, 2020) (holding that amended complaint would be futile because plaintiff inherited claim after March 12, 1996); *Iglesias*, 2020 U.S. Dist. LEXIS 164117, at *35 n.11 (requiring plaintiff to prove in amended complaint that interest was transferred or vested prior to March 12, 1996).

Given the Court's conclusions, amendment of the complaints would be futile. There is no dispute that the Subject Properties were confiscated before March 12, 1996, and that Glen acquired ownership of his claim to the Subject Properties after March 12, 1996 (D.I. 33 at ¶¶ 49, 51). He cannot plausibly allege otherwise. Therefore, the Court's dismissal will be with prejudice.

### 2.    Scienter

Defendants contend that Glen has also failed to allege facts that could give rise to a reasonable inference that Defendants knowingly and intentionally engaged in one of the three types of activities described in subsection (A) of the Helms-Burton Act's definition of "traffics."[15] (*See, e.g.,* D.I. 37 at 12; *see also* 22 U.S.C. § 6023(13)(A)) In particular, according

---

[15] 22 U.S.C. § 6023(13)(A) states:

    (13) Traffics

        (A) As used in subchapter III, and except as provided in subparagraph (B), a person "traffics" in confiscated property if that person knowingly and intentionally –

to Defendants, the operative complaints do not contain allegations that Defendants knew that the Subject Hotels sit on "confiscated" properties. (*See* D.I. 37 at 13; *see also* D.I. 33 at ¶ 137)

In response, Glen first argues that the definition of the term "traffics" only requires that Defendants knowingly and intentionally engage in commercial activities, and does not also require that Defendants know that the Subject Hotels sit on confiscated properties. (*See* D.I. 43 at 26-27) The Court disagrees with Glen. Instead, the Court finds persuasive the analyses of numerous other courts that have interpreted statutes having specific knowledge requirements as requiring knowledge of all the elements listed in the statute.[16] Also persuasive are the recent

---

> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person, without the authorization of any United States national who holds a claim to the property.

Glen argues that finding a requirement for specific knowledge of confiscation is untenable as subpart (iii) does not even mention "confiscated property." (D.I. 43 at 28 n.20) But Glen neglects that the interpretation of subpart (iii) necessarily involves subparts (i) and (ii), as subpart (iii) refers back to subparts (i) and (ii) for the definition of "trafficking."

[16] *See, e.g.*, *Rehaif v. United States*, 139 S. Ct. 2191, 2196 (2019) ("As a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime.") (internal citation omitted); *Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009) (holding that statute prohibiting "knowingly transfer[ring], possess[ing], or us[ing] . . . a means of identification of another person" required proof that defendant "knew that the 'means of identification' . . . belonged to 'another person'"); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69-70 (1994) (holding that statute

decisions of other courts concerning the scienter requirement of the Helms-Burton Act in particular, which have reached the same conclusion as this Court now does. *See, e.g., Glen I,* 2020 WL 4464665, at *6 (rejecting Glen's interpretation because it would "render the 'knowingly and intentionally' language superfluous"); *Gonzalez v. Amazon.com, Inc.,* 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (finding complaint failed to allege knowledge because it did not "demonstrate that the Defendants knew the property was confiscated by the Cuban government nor that it was owned by a United States citizen"), *aff'd,* 835 F. App'x 1011 (11th Cir. 2021); *but see Garcia-Bengochea v. Norwegian Cruise Line Holdings Ltd.,* 2020 WL 5028209, at *2 (S.D. Fla. Aug. 25, 2020) ("Plaintiff need not allege specific facts showing [Defendant's] state of mind when it allegedly 'trafficked' in the confiscated property.").

Glen next contends that Defendants "have reason to know" that the Subject Hotels are operating on confiscated properties because the fact "[t]hat the Castro regime expropriated property from Cuban and U.S. nationals following the revolution is no mystery." (D.I. 43 at 28; *see also* 22 U.S.C. § 6023(9) ("The term 'knowingly' means with knowledge or having reason to know.")) This argument is unavailing. The general knowledge that some properties in Cuba were confiscated more than sixty years ago does not equate to constructive knowledge that the specific Subjected Properties involved in this case were confiscated. If it were otherwise, the knowledge element would be automatically satisfied for essentially any property located in Cuba, a proposition that is not consistent with the statute.[17]

---

prohibiting "knowingly transports or ships in interstate or foreign commerce [child pornography]" was intended to require proof that defendant knew materials to be child pornography).

[17] The legislative findings and presidential statement Glen cites (*see* D.I. 43 at 28-29) do not allow the Court to impute to Defendants the specific knowledge required with respect to the Subject Properties. (*See* 22 U.S.C. § 6081(3)(B) ("Since Fidel Castro seized power in Cuba in

Finally, Glen argues that he provided Defendants with notice of his claims at least 30 days before filing his actions, and that after the end of the 30-day period, all Defendants – except for Visa – continued to traffic in the Subject Properties. (*See* D.I. 33 at ¶ 148; C.A. No. 19-1870 ¶¶ 72, 73, 88, 89) Here, Glen is on more solid ground. Accepting these facts as true, and drawing all reasonable inferences in Glen's favor, the Court finds that Glen has plausibly alleged scienter against all Defendants other than Visa, at least for the post-notice period. *See United States v. Caverly*, 408 F.2d 1313, 1320 n.5 (3d Cir. 1969) (finding that element of scienter may be shown either by specific knowledge or by facts putting reasonable person on notice).

With respect to Visa, however – which, according to Glen's operative complaint, after receiving the notice "instructed its licensees that all Visa-branded cards cannot be used at the [Subject Hotels] henceforth" (C.A. No. 19-1870 D.I. 24 at ¶¶ 73, 89) – Glen has not plausibly alleged scienter. Since Visa Defendants promptly ceased their commercial activities in connection with the Subject Hotels upon receiving the notice, there is nothing in Glen's allegations that could support an inference that Visa Defendants knowingly and intentionally trafficked in the Subject Properties. The failure to allege scienter, therefore, provides an additional basis for dismissing Glen's claims against Visa.

### 3.    Defendants' other grounds for dismissal

Defendants also raise other grounds on which they contend Glen's action should be dismissed, including: (i) Defendants' trafficking was incident and necessary to lawful travel to

---

1959 . . . he has confiscated the property of millions of his own citizens [and] thousands of United States nationals . . . ."); President Clinton's Statement of Action (D.I. 33 at ¶ 34) ("[A]ll companies doing business in Cuba are hereby on notice that by trafficking in expropriated American property, they face the prospect of lawsuits and significant liability in the United States."))

Cuba (*see* § 6023(13)(B)(iii); D.I. 37 at 13); (ii) Glen is prohibited, under the "election of remedies" clause of the Helms-Burton Act, § 6082(f)(1)(B), from bringing this action because he had already brought an action before with respect to the same confiscated properties (*see, e.g.,* D.I. 37 at 10); (iii) the Subject Properties do not constitute "property" under § 6023(12)(B) of the Act (*see, e.g.,* D.I. 37 at 10); and (iv) Glen has not pled facts showing that the Subject Properties have not been the subject of a certified claim, under § 6082(a)(5)(D) (*see, e.g.,* C.A. No. 19-1870 D.I. 30 at 16).[18] Having concluded that Glen's action is barred because he did not acquire the claim to the Subject Properties before the statutory bar date – and further, as against Visa, because he failed to allege scienter – the Court does not need to address these additional potential bases for reaching the same outcome.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant *amici*'s motions for leave to file an *amicus* brief (C.A. No. 19-1809 D.I. 44; C.A. No. 19-1870 D.I. 34), and will grant Defendants' motions to dismiss (C.A. No. 19-1809 D.I. 36, 38, 40; C.A. No. 19-1870 D.I. 27, 29).  An appropriate order follows.

---

[18] Visa and Mastercard had previously challenged the constitutionality of the relevant provisions in the Helms-Burton Act but subsequently withdrew that challenge.  (*See* C.A. No. 19-1870 D.I. 47)